**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Alphonzo EDWARDS, Defendant.**
**Crim. Nos. 69–56—71–56.**

United States District Court
District of Columbia.

June 7, 1957.

———◆———

Alphonzo Edwards in pro. per.

HOLTZOFF, District Judge.

The defendant, Alphonzo Edwards, was sentenced on March 9, 1956, on pleas of guilty, to terms of imprisonment on three charges of robbery. He now moves in proper person to vacate and set the sentences aside.

The motion is made under 28 U.S.Code § 2255, the pertinent provisions of which read as follows:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

The defendant alleges a number of grounds in support of his application. In view of this circumstance, as well as in the light of the fact that in recent years there has been a large increase in such motions, generally filed by convicted prisoners without the aid of counsel, it seems desirable to review and redefine precisely the restricted scope of the governing statute and the limited matters that may be considered under it. This can best be done by reverting to a consideration of first principles and the pertinent aspects of the history of the writ of *habeas corpus*, since the statute was enacted as a substitute for certain functions of the great writ.

One of the basic and fundamental purposes for which Governments are instituted is to protect peaceful members of society against depredations on the part of unruly individuals. The instrumentality used to achieve this objective is the criminal law. Punishment is inflicted on transgressors, not for the purpose of wreaking vengeance or exacting retribution, but in order to protect victims of crimes and potential sufferers of possible future aggressions by discouraging offenders from a repetition of the evil acts and deterring others from committing similar breaches of law and order. The safety of the victim of the crime and the security of potential victims of possible future crimes, must be a prime concern of those charged with the administration of the criminal law. At the same time it is equally necessary to shield innocent persons against false accusations, to prevent the conviction of suspects on flimsy or doubtful evidence, and to assure the use of civilized methods even against the guilty. For these reasons, under Anglo-American jurisprudence, unlike some other systems of law prevailing elsewhere, the accused is clothed with a presumption of innocence

and his guilt must be established beyond a reasonable doubt before he can be convicted. Moreover, he is surrounded with certain other well known safeguards. In this respect Anglo-American jurisprudence goes farther than some other systems of law in preserving the rights of the accused. As a consequence, undoubtedly there are times when criminals escape through the meshes and go unwhipped of justice. This result is preferable, however, to the possible risk of convicting an innocent person. On the other hand, it is necessary not to concentrate on the privileges of the accused to the extent of neglecting the interests of the victim of the crime. The victim must not become a forgotten man.

The basic philosophy on which the administration of the criminal law must rest, is nowhere better formulated than by Mr. Justice Cardozo, in Snyder v. Commonwealth of Massachusetts, 291 U. S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674, where he made the following pronouncement:

> "* * * justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true."

Every person charged with a crime is entitled to one trial and one appeal as of right. The first was accorded to him by the common law and is guaranteed by the Constitution. The second is granted by statute. There must, however, be an end to litigation and under ordinary circumstances the law does not contemplate any further proceedings. An exception is made for unusual cases in which newly discovered evidence develops after the trial. Motions for a new trial on the ground of newly discovered evidence, are recognized and permitted.

It is not a sufficient safeguard of liberty, however, to stop at providing fair trials for persons charged with criminal offenses. It is also indispensable to prevent imprisonment by executive action without a trial. History shows that one of the evils flowing from tyrannical and dictatorial governments whose power is not properly limited, is arbitrary imprisonment of individuals without trial. To prevent this abuse the common law developed the writ of *habeas corpus,* which later became statutory as a result of the enactment of the epoch making Habeas Corpus Act. This Act is one of the beacon lights of freedom. The writ of *habeas corpus* became a palladium of liberty. In developing this great prerogative writ Anglo-American jurisprudence again showed a greater concern for human dignity and personal freedom than is frequently the case under other systems of law.

Thus the purpose of the writ of *habeas corpus* was to prevent imprisonment without a trial, as well as to afford a remedy in cases in which a trial was unduly delayed. Consequently, a return showing that the petitioner was incarcerated pursuant to a judgment of a court of competent jurisdiction, was a complete answer to the writ and closed the inquiry. Any error in the proceeding culminating in the judgment could not be reviewed by a writ of *habeas corpus,* for the writ was not intended for that purpose.[1]

In recent years, however, the Supreme Court extended the use of the writ of *habeas corpus* to certain exceptional situations in which the petitioner was convicted, but the judgment of conviction might be deemed to be void, as distinguished from erroneous. The first striking step in that direction was taken in Moore v. Dempsey, 1923, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543, in which the Court held that a writ of *habeas corpus* might issue on a showing that the trial court had been completely dominated by a mob, thereby rendering the trial a

---

1. Ex parte Watkins, 3 Pet. 193, 202, 7 L.Ed. 650; United States v. Hayman, 342 U.S. 205, 211, 72 S.Ct. 263, 96 L.Ed. 232; Brown v. Allen, 344 U.S. 443, 533, 73 S. Ct. 397, 97 L.Ed. 469.

sham and a mask. The Court indicated that under such circumstances, the judgment of conviction would be void.

In Mooney v. Holohan, 1935, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791, it was stated that if the prosecuting authorities knowingly procured a conviction by perjured testimony, the deception on the court made the trial a pretense, thereby rendering the judgment void. It was suggested that under such circumstances, a writ of *habeas corpus* would lie. In Bowen v. Johnston, 1939, 306 U. S. 19, 59 S.Ct. 442, 83 L.Ed. 455, it was indicated that territorial jurisdiction of the trial court, that is whether Federal or State courts had authority over a particular area, might be questioned in a *habeas corpus* proceeding.

The most far-reaching of this group of decisions is Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. This case is an important milestone in the progress of human liberty, because it, for the first time, construed the constitutional right of counsel under the Sixth Amendment as comprising a privilege of an indigent defendant to have counsel assigned to him by the court. From the standpoint of the present discussion, however, the importance of the case lies in its procedural aspect. It reaches the conclusion that failure to accord this right at the trial might be raised by a writ of *habeas corpus* on the theory that thereby the court lost jurisdiction. In brief, it should be emphasized that it is only in a few extreme and extraordinary situations that a writ of *habeas corpus* could be invoked to invalidate a judgment of conviction regular on its face.

The decision in Johnson v. Zerbst had many practical ramifications. It gave rise to a plethora of applications on the part of convicted prisoners in Federal penal institutions, claiming that they were not accorded the right of counsel at their trial or when they pleaded guilty. United States District Courts for the districts in which such institutions were located became flooded with applications of this kind. Most of the petitions proved entirely lacking in merit, but each of them required careful consideration, thus imposing an unexpectedly heavy burden on some district judges. What was much more important, this unforeseen development led to the strange outcome of one district judge passing upon the validity of proceedings before another district judge, sometimes located at a distant point, on evidence dehors the record. One Court of Appeals characterized this practice as "unseemly".[2] There was a still worse feature lurking in this procedure. Since evidence dehors the record was taken at the hearing, the trial judge at times became a witness, either by deposition or otherwise. Thus an intolerable situation developed of having the testimony of the trial judge and the word of a convicted felon pitted against each other. This result was manifestly incompatible with the dignity of the Federal judiciary and did not enhance respect for the courts on the part of evildoers.[3] Thus, the great writ of *habeas corpus* became temporarily distorted to that extent and its use was deflected from its historic lofty objective for the time being.

The Judicial Conference of the United States took cognizance of this serious problem and of the evils lying in its wake, and appointed a Committee to consider it. This Committee was headed by Honorable John J. Parker, Chief Judge of the United States Court of Appeals for the Fourth Circuit, as Chairman. It recommended legislation, which became Section 2255 of Title 28 of the United States Code. The purpose of this measure was to transfer from the judge who might have issued a writ of *habeas corpus* to the judge who originally tried

---

2. Carvell v. United States, 4 Cir., 173 F.2d 348.

3. These abuses are described in detail by Honorable Louis E. Goodman, United States District Judge for the Northern District of California, in his address on Use and Abuse of the Writ of Habeas Corpus, 7 F.R.D. 313.

the case, the consideration of matters that had theretofore been litigated in *habeas corpus* proceedings after a conviction in the Federal courts. This object was attained by permitting a motion to set aside and vacate the judgment and sentence to be made before the trial judge, as a substitute for the writ of *habeas corpus*, application for which had to be made before a judge for the district in which the petitioner was confined.[4]

Section 2255 of Title 28 did not broaden the right of attack or enlarge the scope of review theretofore permitted by *habeas corpus*. It merely substituted a proceeding by motion before the trial judge, for a petition for *habeas corpus*. The motion is not a substitute for an appeal, and does not permit a review of alleged errors at the trial. It may not be used as a motion for a new trial. It is applicable only to cases in which the judgment is void, or otherwise subject to collateral attack.[5] It may be invoked only in situations in which a writ of *habeas corpus* had previously been the appropriate remedy.

The purpose and effect of the legislation were summarized in Kreuter v. United States, 10 Cir., 201 F.2d 33, 35, as follows:

"The purpose of 28 U.S.C.A. § 2255 was not to confer a broader right of attack upon a judgment and sentence than might theretofore have been made by habeas corpus, but rather to provide that the attack which theretofore might have been made in some other court through resort to habeas corpus, must now be made by motion in the sentencing

court, unless it shall appear that the remedy by motion is inadequate or ineffective to test the legality of the prisoner's detention."

The Court of Appeals for the Fourth Circuit in Birtch v. United States, 173 F.2d 316, 317, summarized these principles as follows. It should be observed that Judge Parker, the author of the legislation, participated in this decision.

"It is true of motions made under this section, as we held of motions in the nature of applications for writs of error coram nobis under the prior practice in the appeal before us, that they 'may not be used to review the proceedings of the trial as upon appeal or writ of error, but merely to test their validity when judged upon the face of the record or by constitutional standards.'"

■ It is clear that it was not the intention of the Congress in enacting 28 U.S.C. § 2255, to provide an additional or a supplemental review of convictions in criminal cases. The aim of the legislation was solely to afford a remedy for extraordinary and exceptional situations which previously had been accorded by a writ of *habeas corpus*. The new remedy may not be used to correct errors occurring during the trial even if they relate to constitutional rights.[6]

■■ The moving party on a motion under Section 2255 undertakes a heavy burden to overcome the regularity of the conviction. This is especially true when the attack comes a long time after the event.[7] The motion must present detailed facts and not merely conclusions

4. A detailed history of 28 U.S.C. § 2255, is found in an article by Honorable John J. Parker, on Limiting the Abuse of Habeas Corpus, 8 F.R.D. 171.

5. Bishop v. United States, 96 U.S.App.D.C. 117, 223 F.2d 582; Hall v. United States, 98 U.S.App.D.C. 341, 235 F.2d 838; Taylor v. United States, 4 Cir., 177 F.2d 194; Hahn v. United States, 10 Cir., 178 F.2d 11; Davilman v. United States,

6 Cir., 180 F.2d 284; United States v. Gallagher, 3 Cir., 183 F.2d 342; Shobe v. United States, 8 Cir., 220 F.2d 928; Masi v. United States, 5 Cir., 223 F.2d 132; Lipscomb v. United States, 8 Cir., 226 F.2d 812.

6. Parker v. United States, 4 Cir., 184 F.2d 488.

7. Bishop v. United States, 96 U.S.App.D.C. 117, 223 F.2d 582.

of law or fact.[8] Moreover, statements contained in such a motion, if contradicted by the files or records of the court, need not be taken as true.[9]

Without attempting an exhaustive or comprehensive enumeration, the following are some of the types of contentions that may *not* be entertained or considered on a motion under Section 2255:

That the evidence at the trial was insufficient to justify a conviction;[10]

That the Government knowingly used perjured testimony, unless this allegation is supported by particulars showing the alleged perjury in detail, and the sources of the Government's alleged knowledge;[11]

That although the defendant pleaded guilty, he was in fact not guilty;[12]

That although the defendant was represented by counsel, he entered his plea of guilty under a misapprehension;[13]

That the indictment was insufficient or defective;[14]

That a confession admitted at the trial had been obtained as a result of an illegal detention;[15]

That there were errors in rulings on admissibility of evidence at the trial;[16]

That there were errors in the court's instructions to the jury;[17]

That the defendant was illegally arrested;[18]

That evidence introduced at the trial was obtained by an unlawful search and seizure in violation of the Fourth Amendment;[19]

That the defendant was illegally entrapped into committing the offense;[20]

That newly discovered evidence may establish the defendant's innocence;[21]

That a motion for a judgment of acquittal was erroneously denied;[22]

That the prosecuting attorney used extreme and intemperate language in his argument to the jury;[23]

That prejudicial publicity preceded or surrounded the trial;[24]

That contrary to the defendant's instructions his counsel failed to appeal from the judgment of conviction;[25]

8. United States v. Sturm, 7 Cir., 180 F.2d 413.

9. Pelley v. United States, 7 Cir., 214 F.2d 597.

10. Taylor v. United States, 4 Cir., 177 F. 2d 194; Hastings v. United States, 9 Cir., 184 F.2d 939; Crawford v. United States, 6 Cir., 219 F.2d 478; Shobe v. United States, 8 Cir., 220 F.2d 928; Bocock v. United States, 7 Cir., 226 F.2d 720; Simmons v. United States, 10 Cir., 230 F.2d 73.

11. Taylor v. United States, 8 Cir., 229 F. 2d 826.

12. United States v. Gallagher, 3 Cir., 183 F.2d 342.

13. United States v. Sturm, 7 Cir., 180 F. 2d 413, certiorari denied 339 U.S. 986, 70 S.Ct. 1008, 94 L.Ed. 1388.

14. Hall v. United States, 98 U.S.App.D.C. 341, 235 F.2d 838; Pulliam v. United States, 10 Cir., 178 F.2d 777; Keto v. United States, 8 Cir., 189 F.2d 247; Kreuter v. United States, 10 Cir., 201 F.2d 33.

15. Smith v. United States, 88 U.S.App.D.C. 80, 187 F.2d 192, certiorari denied 341 U.S. 927, 71 S.Ct. 792, 95 L.Ed. 1358.

16. Hurst v. United States, 10 Cir., 177 F.2d 894; Davilman v. United States, 6 Cir., 180 F.2d 284.

17. Adams v. United States, 95 U.S.App. D.C. 354, 222 F.2d 45; Hastings v. United States, 9 Cir., 184 F.2d 939.

18. United States v. Sturm, 7 Cir., 180 F. 2d 413, certiorari denied 339 U.S. 986, 70 S.Ct. 1008, 94 L.Ed. 1388.

19. Kinney v. United States, 10 Cir., 177 F. 2d 895; United States v. Sturm, 7 Cir., 180 F.2d 413.

20. Frazer v. United States, 9 Cir., 233 F. 2d 1.

21. United States ex rel. House v. Swope, 5 Cir., 219 F.2d 538.

22. Adams v. United States, 95 U.S.App. D.C. 354, 222 F.2d 45.

23. Adams v. United States, 95 U.S.App. D.C. 354, 222 F.2d 45.

24. United States v. Rosenberg, 2 Cir., 200 F.2d 666.

25. Dennis v. United States, 4 Cir., 177 F. 2d 195.

That the defendant was insane at the time the crime was committed.[26]

■ Considering the motion in the instant case in the light of the foregoing principles, the conclusion inescapably follows that most of the contentions now belatedly advanced may not be raised by a motion under Section 2255 and, therefore, may not be entertained in this proceeding. Among them are allegations that the defendant was illegally arrested; that a search and seizure were illegally made in violation of the Fourth Amendment; that there were irregularities in the proceeding before the United States Commissioner following his arrest; and that he was mentally incompetent at the hearing before the Commissioner.

■ The defendant further claims on this motion that he did not receive effective assistance of counsel in the trial court. This assertion is insufficient. Such allegations are frequently improvidently made by disgruntled and disappointed defendants for whom counsel were unable to obtain the result for which their clients had forlornly hoped. It is a simple matter for a layman, especially one without education, to criticize the work of a professional man if the outcome of his services has not been as successful as the client had hoped. While the courts must unhesitatingly and unflinchingly exercise disciplinary action against unworthy members of the bar, the courts are equally bound to protect members of the bar appearing before them against unjust and unwarranted attacks.

A mere assertion that the attorney did a poor job, or was guilty of an error of judgment, is insufficient.[27] Similarly dissatisfaction with results obtained by counsel, is not entitled to consideration.[28] General allegations that the defendant was ineffectively represented by counsel are insufficient unless they are accompanied by a detailed statement of such a factual situation which, if established, would show that the representation of counsel was of such a kind as to reduce the trial to a farce or a sham and to shock the conscience of the court.[29]

An excellent discussion of this subject is found in the opinion of Arnold, J., in Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667. He emphatically points out that the court may not review the entire proceeding and consider all the alleged mistakes of counsel which the ingenuity of a convict could set down on paper during the enforced leisure of his confinement. He made the sage remark that, "The opportunity to try his former lawyer has its undoubted attraction to a disappointed prisoner" (80 U.S.App.D.C. at page 8, 148 F.2d at page 670). He sums up his discussion as follows (80 U.S.App.D.C. at page 8, 148 F.2d at page 670):

"Few trials are free from mistakes of counsel. How much these mistakes contribute to the result can never be measured. There are no tests by which it can be determined how many errors an attorney may make before his batting average becomes so low as to make his representation ineffective. The only practical standard for habeas corpus is the presence or absence of judicial character in the proceedings as a whole.

"For these reasons we think absence of effective representation by counsel must be strictly construed. It must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and to correct it. We do not believe that allegations even of serious mistakes on

26. Bishop v. United States, 96 U.S.App. D.C. 117, 223 F.2d 582; Hahn v. United States, 10 Cir., 178 F.2d 11.

27. Williams v. United States, 9 Cir., 236 F. 2d 894, 897.

28. Kinney v. United States, 10 Cir., 177 F. 2d 895.

29. United States v. Wight, 2 Cir., 176 F.2d 376; Pelley v. United States, 7 Cir., 214 F.2d 597.

the part of an attorney are ground for habeas corpus standing alone."[30]

In United States v. Wight, 2 Cir., 176 F.2d 376, 379, it was stated that, "unless the purported representation by counsel was such as to make the trial a farce and a mockery of justice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds for the issuance of a writ of *habeas corpus* or the granting of a petition pursuant to 28 U.S.C. § 2255."

In many criminal cases defendants are represented by counsel assigned by the court. Members of the bar undertake such designations without compensation as a professional duty. They are in a position somewhat similar to that of a physician or surgeon who devotes a part of his time and gives his skill to charity patients in a free clinic. Observation and experience shows, in this district at least, that lawyers so assigned devote as much zeal, industry and well directed efforts in behalf of their clients as attorneys who have been retained and are paid for their services. In fact, many impecunious defendants are better represented by counsel than one who hires his own lawyer. To permit unsupported statements of a layman, sometimes an ignorant layman, that his lawyer did not do a good job, to warrant a hearing to determine the efficiency of representation of counsel, would place every lawyer at the mercy of a disappointed client. Every defense counsel would run the risk of being put on trial at the behest of his client on a charge of losing the case. His professional reputation and personal integrity would be at stake in every such case. Such a situation would be unfair and intolerable. It would be a travesty on justice. Moreover, it might lead to reluctance and even unwillingness on the part of lawyers to accept assignments to defend indigent defendants.

 In the case at bar, the defendant seeks to sustain his contention that he was denied effective representation by counsel principally by the allegation that his counsel should not have allowed him to plead guilty, but should have insisted on a trial. He also asserts that counsel conferred with him only once. A single conference is, however, frequently enough.[31] Lawyers, both those who are assigned by the court and those who have been retained, frequently advise their clients to plead guilty, if upon a scrutiny of the case they reach the conclusion that there is no defense. They do so in the hope of placing their clients in a better position to receive leniency, since the fact that the defendant pleads guilty is a consideration that the court frequently takes into account in the imposition of sentence. In this instance, there is no allegation that the defendant was innocent, or that he had any defense. It cannot be said that counsel's advice was unwise. *A fortiori* it cannot be successfully stated that the representation of counsel was so ineffective as to become a mockery and a farce.

In connection with this motion, the court ordered the court reporter to prepare, at the expense of the Government, a transcript of the proceeding that transpired before Honorable Bolitha J. Laws, the Chief Judge of this Court, when the defendant withdrew his pleas of not guilty and entered pleas of guilty. The proceeding took place in the Assignment branch on February 13, 1956, shortly before the case was reached for trial. The record indicates that the case was

30. While Diggs v. Welch, discussed in the text, was decided on an application for a writ of *habeas corpus*, it is, nevertheless, authoritative since, as heretofore pointed out, a motion under 28 U.S.C. § 2255, is equivalent to an application for a writ of *habeas corpus* insofar as concerns the scope of review, and does not enlarge the range of matters that may be considered.

31. In United States v. Wight, 2 Cir., 176 F.2d 376, it was held that a statement that counsel conferred with his client for only fifteen minutes, did not indicate lack of effective representation of counsel.

called because defense counsel indicated that there was a desire to dispose of the matter otherwise than by trial. The defendant was represented by counsel, who stated in open court that he had advised the defendant of his right to a jury trial, but that the defendant desired to plead guilty to the three indictments. The Court indicated that it would accept the pleas. The Deputy Clerk thereupon formally made a separate inquiry in each of the three cases whether the defendant wished to withdraw his plea of not guilty and enter a plea of guilty. The defendant responded, "Yes, sir." in each instance. In each case, the Deputy Clerk also asked the defendant, "Are you pleading guilty because you are guilty and for no other reason?" On each occasion, the defendant responded, "Yes, sir." The Court then directed that the case be referred to the Probation Office for a presentence investigation. As a matter of routine, cases in which pleas of guilty are entered in the Assignment branch, are assigned for sentence in rotation to various judges holding criminal court, a certain proportion being retained in the Assignment branch. In this manner, this case came in due course for sentence before the writer of this opinion. The Court had before it at that time a complete presentence investigative report, prepared by the Probation Office. The defendant and his counsel were present. Both were given an opportunity to make statements. An oral argument seeking mitigation of punishment was made by counsel. Sentence was thereupon imposed.

For the reasons above indicated, the Court concludes that the allegations of ineffective representation of counsel are not sufficiently supported by facts to justify a hearing. It is obvious that the defendant is making the present motion because he was disappointed at the sentence that was imposed, for he had evidently hoped to receive even a greater degree of leniency than was extended to him because of his plea of guilty.

The motion filed on May 1, 1957, under 28 U.S.C. § 2255 to vacate the sentences, is denied on the ground that the motion and the files and records of the case conclusively show that the defendant is entitled to no relief.