**UNITED STATES of America,**

v.

**Norman E. SMITH, Defendant.**

**Crim. No. 29-56.**

United States District Court
District of Columbia.

March 21, 1958.

Norman E. Smith, pro se.

HOLTZOFF, District Judge.

This is a motion filed by the defendant *in propria persona* to set aside and vacate a sentence. The motion is based on 28 U.S.C. § 2255,[1] and on 18 U.S.C. § 4245.

---

1. The pertinent provisions of 28 U.S.C. § 2255 read as follows:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was

The defendant, Norman E. Smith, was indicted on January 4, 1956 on three charges of robbery. Each count involved robbery of the type popularly known as "purse snatching". Each robbery had been accompanied by aggravating circumstances. The offenses were alleged to have been committed on November 3, November 6, and November 9, 1955, respectively. The defendant was tried before this court and a jury on January 27 and 31, 1956. He was zealously defended by counsel, as was the defendant's right and his counsel's duty. He called two witnesses in his own behalf,— his mother and his brother—, but did not take the stand himself. The jury found him guilty on all three counts.

The case was then referred to the Probation Office for a presentence investigation, in the course of which the defendant was interviewed at length by the Probation Officer, as is the usual practice in such matters. It appeared from the presentence investigation report that the defendant had been sentenced on May 8, 1953 for a similar crime and had been paroled from prison only one month prior to his arrest on the charges involved in this case. On February 10, 1956, this court imposed a sentence of imprisonment for a term of twenty months to five years on each count, to be served consecutively. In other words, the aggregate sentence was five years to fifteen years, although such a sentence could have been imposed separately on each of the three counts. In that event the total would have been fifteen years to forty-five years.

On December 30, 1956, the defendant wrote a letter to the court, in his own handwriting, in which he requested a reduction of the sentence because he did not believe he would have a chance of parole. He added in his letter: "I must state I've just about learned my lesson."

On April 6, 1957, the defendant filed a handwritten motion, mailed from the District of Columbia Reformatory in Lorton, Virginia, to vacate and set aside the sentence under 28 U.S.C. § 2255, on the alleged ground that he had not been adequately represented by counsel at his trial. There were no specifications indicating wherein counsel was claimed to have been inadequate. Accordingly, leave to file the motion *in forma pauperis* was denied.[2] It is interesting to observe that the presentence investigation report shows that when interviewed by the Probation Officer, the defendant stated that his lawyer said everything necessary for him.

On February 25, 1958, the defendant submitted by mail from the Reformatory, another handwritten motion *in propria persona* to vacate the judgment, this time invoking 18 U.S.C. § 4245, as well as 28 U.S.C. § 2255. He now alleges that it has been ascertained in the institution in which he is incarcerated that he has a very low I. Q., and on this basis contends that he was not mentally competent to stand trial. His naivete seems to be exceeded only by his ingenuity and his temerity. In order to make final disposition of the matter,[3] the court will consider this motion both from the standpoint of 28 U.S.C. § 2255 and 18 U.S.C. § 4245.

Section 2255 of Title 28 U.S.Code, which is quoted at length in the margin, contains the following significant limitation:

> "*The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.*"

The phraseology of this provision is clear, precise, definite, unambiguous and

in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2. Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667; United States v. Wight, 2 Cir.,

176 F.2d 376; Pelley v. United States, 7 Cir., 214 F.2d 597; United States v. Edwards, D.C., 152 F.Supp. 179, 185 et seq.

3. Bailey v. United States, 101 U.S.App. D.C. 11, 246 F.2d 698.

unequivocal. It is not confined to a direction that the sentencing court shall not be required to entertain a second or successive motion for similar relief unless made on different grounds. It does not merely provide that the sentencing court may in its discretion decline to entertain a second or successive motion, for in that event, it might possibly be urged that the discretion was subject to review. It is well to repeat that the Congress has said that, "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner". The entire matter was thus entrusted by the Congress to the district court with finality. There is nothing unusual in this course, because there are other and more important matters that are delegated to the unreviewable discretion of the district judge, such as the imposition of sentences in criminal cases.

One may well wonder why this emphasis, why this discussion of a perfectly simple point, why labor the obvious. Unfortunately, however, it is rendered desirable to do so by the fact that the provision above quoted has sometimes been overlooked or ignored, and its clear meaning has not always been acknowledged. If the legislative branch enacts a statute that is repugnant to the Constitution, it is within the power of the courts to decline to apply it and to declare it invalid. If the Congress passes a measure that is vague, indefinite, or susceptible of more than one interpretation, it is the function of the courts to construe the statute and to determine what meaning should be attached to it. This even may be done in the rather rare cases in which the statute is in fact unambiguous, but a literal construction would lead to a manifestly absurd or un-just result that could not possibly have been intended by the legislature.[4] If, however, the enactment, as is true in the instant case, is clear, precise, definite, unambiguous and unequivocal, as has been stated above, the judicial branch may not attach to it a different meaning than appears upon its face even though there may be a strong temptation to do so. Otherwise the courts would be legislating, and thereby encroaching on the power of the legislative department of the Government, contrary to the basic principle of the separation of powers. The legislative and the executive branches are guardians of the Constitution and the laws equally with the judiciary.[5]

It was observed some years ago by Mr. Justice Stone in the trenchant, vigorous style that was so characteristic of him, that,

" * * * while unconstitutional exercise of power by the executive and legislative branches of the government is subject to judicial restraint, the only check upon our own exercise of power is our own sense of self-restraint."[6]

To be sure, Mr. Justice Stone was referring to the power of the courts to declare statutes unconstitutional. His remarks are equally applicable to judicial construction of statutes.

The weight of authority applies the above mentioned provision of § 2255 as written. Thus, in Hamilton v. United States, 4 Cir., 204 F.2d 927, 928, the court stated that, "The District Court was not required to entertain a second motion to set aside the sentence". In that case the bench was composed of Chief Judge Parker and Judges Soper and Dobie. This decision is of peculiar importance because Judge Parker was the Chairman of a Committee of the Judicial Conference of the United States

---

4. Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 266; United States v. Kirby, 7 Wall. 482, 486, 19 L.Ed. 278.

5. B. N. Cardozo, The Paradoxes of Legal Science, p. 121.

6. United States v. Butler, 297 U.S. 1, 78–79, 56 S.Ct. 312, 325, 80 L.Ed. 477. While these remarks are contained in a dissenting opinion, this circumstance hardly detracts from the force of the general principle expressed by Mr. Justice Stone.

that drafted the legislation which eventually became 28 U.S.C. § 2255.

In Palmer v. United States, 10 Cir., 249 F.2d 8, 9, it was stated that, " * * * no right exists to be heard upon successive motions filed under Sec. 2255". The following authorities are to the same effect: United States v. Spadafora, 7 Cir., 200 F.2d 140, 142; United States v. Brown, 7 Cir., 207 F.2d 310, 311.

The Court of Appeals for the District of Columbia Circuit reached the same result in Morris v. United States, 101 U.S.App.D.C. 296, 248 F.2d 618, 619. In that case Judge Prettyman, with whom Judge Washington and Judge Burger concurred, quoted the provision that "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner", and added, that "under the specific terms of the statute the court was not required to entertain the motion now before us. That disposes of the case".

The history of what have been latterly denominated as "post conviction remedies",—a term of recent origin,—indicates a good reason and sound basis for this limitation. Traditionally, the accused in a criminal case is entitled as of right to one trial and one appeal. If he is found guilty and the judgment is affirmed on appeal, or if he fails to appeal, ordinarily there is no reason for disturbing the conviction. The interests of the public to be protected against depredations of those members of society who have insufficient regard for the rights of others, as well as the orderly administration of justice, demand that there be an end to litigation, except under extraordinary or exceptional circumstances.

■ The development of so-called post conviction remedies in the Federal courts

may be said to have been started by permitting writs of *habeas corpus* to be used to review claims of alleged deprivation of constitutional rights, even though the defendant was imprisoned pursuant to a judgment of conviction by a court of competent jurisdiction.[7] The function of the great prerogative writ of *habeas corpus,* however, which originated in the common law and was made a part of English statutory law by the famous Habeas Corpus Act, and later given the protection of the Constitution of the United States, was solely to prevent imprisonment without a trial.[8] The Revised Statutes of 1873–4 contained a provision that the court in hearing a *habeas corpus* proceeding, shall dispose of the matter "as law and justice require".[9] This phrase was dormant for a great many years. It may be doubted whether it had originally been intended by the Congress to change the pre-existing law. A line of decisions of the Supreme Court, however, later interpreted it as allowing the writ of *habeas corpus* to be used as a post conviction remedy to determine whether the defendant had been deprived of a constitutional right. Thus, this development resulted in what are really two different writs called by the same name. One is the prerogative writ of *habeas corpus,* which has been regarded as a palladium of liberty and which is protected by the Constitution. Its function is to prevent imprisonment without a trial. The other writ of *habeas corpus,* which is a statutory writ, and for the sake of clarity might well have been given a different appellation, initiates a proceeding to review allegations that in the course of the trial which resulted in his conviction, the defendant was deprived of a constitutional right.

The use of the writ of *habeas corpus* by convicted prisoners to test the question whether at their trials they were

---

7. The first important step in this direction was taken in Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543.

8. Ex parte Watkins, 3 Pet. 193, 202, 7 L.Ed. 650; United States v. Hayman,

342 U.S. 205, 211, 72 S.Ct. 263, 96 L.Ed. 232; United States v. Edwards, D.C., 152 F.Supp. 179, 181.

9. R.S. § 761; 28 U.S.C. § 2243.

deprived of any constitutional rights, increased to a degree that a very heavy burden was imposed on Federal courts for districts in which Federal penal institutions were located. What was even worse, it resulted in a review by one judge of proceedings before a judge of another district, frequently a distant district. In order to cure this deplorable situation, the Judicial Conference of the United States appointed a Committee, which was headed by Judge Parker to survey this subject. This Committee eventually drafted the legislation that was later enacted in the form of 28 U.S.C. § 2255. The purpose of the measure was to require such a review to be made by motion before the sentencing judge.[10] It was anticipated, however, that this remedy might be subject to abuse. Subsequent events show that this anticipation was well founded. In order to check some of the possible abuses, the statute empowered the district judge to limit a defendant to only one such motion in which he should place all the grounds in support of the relief that he sought. This is manifestly the reason why there was included in the statute the provision that the district court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

■ In this case the court will exercise the authority conferred on it by this provision and hereby refuses to entertain the present motion. The court is motivated by the obvious fact that the ground on which this motion is based is manifestly an afterthought. There was no suggestion at the trial by defense counsel, who was zealous and energetic in the protection of his client's rights, or by the defendant's mother or brother who testified in his behalf, or by the defendant himself, that he was mentally incompetent to understand the nature of the proceedings against him, or to assist in his defense. The interview that the Probation Officer had with him in the course of the presentence investigation did not disclose any mental abnormality or any inability to discuss his case intelligently. On the contrary, he seemed to understand his position fully, as he informed the Probation Officer that he did not take the stand in his own behalf at the trial because his lawyer said everything that was necessary in his behalf. To hold a hearing at this late date as to the mental competency of the defendant in January, 1956,—more than two years ago—would be a burdensome and entirely unnecessary proceeding, and indeed it might be difficult to produce evidence bearing on that question because of the remoteness of time.

The defendant also invoked Section 4245 of Title 18 of the United States Code. The pertinent portions of that section read as follows:

"Whenever the Director of the Bureau of Prisons shall certify that a person convicted of an offense against the United States has been examined by the board of examiners referred to in title 18 United States Code, section 4241, and that there is probable cause to believe that such person was mentally incompetent at the time of his trial, provided the issue of mental competency was not raised and determined before or during said trial, the Attorney General shall transmit the report of the board of examiners and the certificate of the Director of the Bureau of Prisons to the clerk of the district court wherein the conviction was had. Whereupon the court shall hold a hearing to determine the mental competency of the accused in accordance with the provisions of section 4244 above, and with all the powers therein granted * * *."

■ Obviously the defendant may not rely on the provisions of the section. They can be set in motion only by a certificate of the Director of the Bureau of

10. This subject is reviewed in greater detail in United States v. Edwards, D.C., 152 F.Supp. 179, 182–183.

Prisons.[11] There is no such certificate in this case. The defendant may not institute such a proceeding on his own motion.

The motion to vacate sentence will not be entertained.

---

11. Hoskins v. United States, 6 Cir., 251 F.2d 51.