Johh J. Walsh, J.
The defendant-petitioner was indicted by the Grand Jury of Oneida County on May 11, 1948 in four separate indictments of six separate felonies:
Indictment No. 6,682: kidnapping (1 count); indictment No. 6,683: burglary, third degree and grand larceny, first degree; indictment No. 6,685: grand larceny, second degree; and indictment No. 6,686: sodomy (2 counts).
A codefendant was named in the kidnapping, larceny and burglary indictments and was separately indicted for rape and sodomy. The codefendant is not before the court on this application. The alleged victims were two young children, aged seven and eight years respectively who were allegedly taken in an automobile as they were leaving a motion picture theatre in Utica to a spot where it was claimed a rape and one or more acts of sodomy were performed.
The petitioner and his codefendant were brought to trial in the Oneida County Court in June, 1948 at Rome, New York, upon the indictment charging kidnapping. Counsel was assigned to defendant by the late Oneida County Judge Ezra Hahagah upon the arraignment in May, and capably represented the defendant during the course of a four-or five-day trial. The jury returned a verdict of guilty and both defendants thereafter entered pleas of guilty to the other pending indictments.
On June 8, 1948, the late County Judge sentenced the defendant-petitioner to a total of 75 years to life:
Indictment No. 6,682: Kidnapping, 40 years to life
Indictment No. 6,683: Grand larceny, first degree, 5 years to 10 years
*182 Indictment No. 6,683: Burglary, third degree, 5 years to 10 years
Indictment No. 6,685: Grand larceny, second degree, 5 years to 10 years
Indictment No. 6,686: Sodomy (1st count), 10 years to 20 years
Indictment No. 6,686: Sodomy (2nd count), 10 years to 20 years
All sentences to be served consecutively.
The indictments in each case charged the defendant-petitioner, Howard R. Coe, with being a second offender in that he had previously been convicted upon a plea of guilty on June 2, 1943 of the crimes of burglary, third degree and petit larceny and had been sentenced to Elmira Reformatory with the execution of the sentence being suspended and defendant being placed on probation for three years.
The judgment of conviction on the kidnapping charge (Indictment No. 6,682) is sought to be vacated by the instant petition for a writ of error coram nobis. The petition was verified on the 2nd day of March, 1961 and the alleged errors in the 1948 trial consisted of the following:
(a) The court or his assigned counsel failed to advise him that he must appeal within the statutory period of 30 days.
(b) His conviction was based upon an illegal confession admitted into evidence.
(c) The testimony of Doctor Falvo deprived him of a fair trial.
(d) There was unreasonable delay in his original arraignment in Magistrate’s Court.
(e) The Justice of the Peace failed to advise him of his rights.
On March 24, 1962, this court denied the petition without a hearing (29 Misc 2d 147).
Thereafter, and on May 17, 1962, the Appellate Division, Fourth Department (16 A D 2d 876) reversed the order of this court and remanded the proceeding for the sole purpose of holding a hearing to determine: ‘1 whether or not appellant was prevented by the acts of his assigned counsel from complying with the statutory requirements for the taking and perfecting of an appeal from the judgments of conviction.”
There is thus presented a question of possible first impression and of considerable significance to trial courts, prosecuting officials and attorneys assigned without compensation to indigent defendants.
*183 The problem of what remedy, if any, is available to an indigent defendant who has lost or been denied the opportunity to appeal a judgment of conviction has long plagued our courts.
At common law, there was no right of appeal in criminal cases (Bristol v. United States, 129 F. 87). To redress obvious miscarriages of justice, the ancient writ of error coram nobis was employed not as a substitute for appeal, but to bring to the attention of the court matters of fact outside the record which if known at the time would have prevented the conviction.
By statute in this State, the right to appeal a criminal conviction is provided as a statutory right.
The New York version of coram nobis was born in Matter of Lyons v. Goldstein (290 N. Y. 19, 25 [1943]) wherein the Court of Appeals held that: “ The inherent power of a court to set aside its judgment which was procured by fraud and misrepresentation cannot be doubted ’ \
Until recently, the prevailing opinion was that whatever other function the writ of error coram nobis had, it could not be applied to a post-conviction situation created by the failure of a defendant to file a notice of appeal within the statutory period. (24 C. J. S., Criminal Law, § 1606(9); Collins v. State of Kansas, 66 Kan. 201; Hawk v. State of Nebraska, 151 Neb. 717, certiorari denied 339 U. S. 923; Hodges v. United States, 282 F. 2d 858; United States v. Peabody, 173 F. Supp. 413.)
The first indication that coram nobis might be an appropriate remedy is contained in United States v. Robinson (361 U. S. 220 [1960]). In that case the United States Supreme Court declined to extend the time of a defendant to appeal a criminal conviction on the ground of excusable neglect. In a footnote, however, It was suggested that proceedings by way of writ of error coram nobis would redress a denial of basic rights.
In Hodges v. United States (282 F. 2d 858, supra) the Court of Appeals for the District of Columbia refused to allow a writ of error coram nobis. In that case, defendant said that he did not take a direct appeal from the judgment of conviction because he did not know he had only 10 days within which to appeal and his counsel had no opportunity to advise him. Said the court (p. 861): “ Of course, if the Government has obstructed the accused in his efforts to take a direct appeal, that is another story. Cf. Dowd v. U. S. ex rel. Cook, 340 U. S. 206, 71 S. Ct. 262, 95 L. Ed. 215 (1951). But mere neglect in taking an appeal — excusable or not — should not open the door to the bringing of collateral attack * * * in a case where it would not otherwise lie.” (Italics added.)
*184 The appeal to the United States Supreme Court in the Hodges case was dismissed on the ground that the petitioner was entitled to no relief. (368 U. S. 139 [1961].)
In United States v. Peabody (173 F. Supp. 413, 415 [U. S. Dist. Ct., W. D. Washington] the court denied a writ of error coram nobis saying:
“ There is no showing by Peabody that he has ever attempted to file appeal notice or otherwise perfect an appeal. Beyond having counsel make the oral statement of Peabody’s initial intention to appeal there is no showing that thereafter defendant instructed counsel to file a written appeal notice which he had personal knowledge would be required. * * *
“ If the fact that written notice of appeal was not filed was the result of Peabody’s directions or understanding with his counsel, then clearly he has no standing now, almost two years later, to contend that he was deprived of his right to appeal. On the other hand, if the failure to file appeal notice was due to the negligence of Peabody’s counsel, Peabody still is not entitled to the relief sought. ‘ Failure to appeal may not be excused upon a mere showing of neglect of counsel. ’ Dennis v. United States, 4 Cir., 1949, 177 F. 2d 195; Mitchell v. United States, 1958, 103 U. S. App. D. C. 97, 254 F. 2d 954 (Justice Reed joining); United States v. Edwards, D. C. D. C. 1957, 152 F. Supp. 179.
‘' Assuming arguendo that Peabody was deprived of the right of appeal, still he would not be entitled to the relief sought on this present motion. Deprival of appeal alone is not sufficient to warrant vacating a criminal sentence. A showing must be made that there was 1 plain reversible error in the trial ’. Mitchell v. United States, supra, 254 F. 2d at page 955.”
In Dowdy. Cook (340 U. S. 206 [1951]) the defendant prisoner was confined in State prison. His efforts to file his prepared proper appeal papers were frustrated by the Warden acting pursuant to the prison rules. When he did file them, the statutory period to appeal had expired. The United States Supreme Court held that a discriminatory denial of the statutory right of appeal is a violation of the Equal Protection Clause of the Fourteenth Amendment. It directed that the State of Indiana either find a way to give defendant his appeal or discharge him. Thus, a discriminatory denial of the right to appeal was given constitutional status. (See, also, Cochran v. Kansas, 316 U. S. 255 [1942].)
Where, however, a defendant is not prevented by any action of the State and fails to timely pursue his remedy of appeal, he cannot complain of a denial of his constitutional rights. (United States v. Overlade, 149 F. Supp. 425 [U. S. Dist Co., N. D. *185 Indiana]; see, also, Holloway v. State of Oklahoma, 365 Pac. 2d 829 [Okla., 1961]; State of New Jersey v. Janice, 6 N. J. 608 [1951].)
In New York State, a prisoner, Everett Rheim sought to vacate a homicide conviction on various grounds of error in the trial and upon the ground that he was denied his right of appeal. After a hearing upon a petition for writ of error coram nobis which was denied, Rheim in his typewritten brief on appeal raised the issue of a denial of his right to appeal (see Record on Appeal People v. Rheim, 283 App. Div. 1012). The order was affirmed without opinion on June 1, 1954.
Thereafter, Rheim made a new application specifically addressed to the failure to appeal. Judge Schweitzer in General Sessions denied the application: 1 ‘ Petitioner now moves in person for a writ of error coram nobis claiming that he was deprived of his constitutional rights in that his attorney failed to take an appeal from said conviction which denied defendant an appellate review of the judgment of conviction against him. The omission to file a notice of appeal does not affect the validity of the judgment and the court is without power to revoke a legal sentence after its execution has commenced by the service of the term of imprisonment imposed.” (N. Y. L. J., March 12, 1958, p. 8, col. 6.)
Rheim’s attempt to secure Federal aid was likewise unsuccessful. (United States ex rel. Rheim v. Foster, 175 F. 2d 772, cert, denied 338 U. S. 857; see, also, “ The Griffin Case — Poverty and the Fourteenth Amendment ”, 43 Cornell L. Q. 1.)
All attempts to impress a duty upon the trial court to advise defendant of his right to appeal (People v. Brown, N. Y. L. J., Feb. 21, 1961, p. 16, col. 4, affd. 16 A D 2d 910) or a duty upon assigned counsel to file such notice upon conviction have been ‘rejected. In People v. Buck (6 A D 2d 528) the Third Department specifically held that the failure of assigned counsel in a noncapital case to take an appeal is not, ipso facto, a denial of due process or a violation of defendant’s constitutional rights. On February 23, 1960, certiorari to the United States Supreme Court was denied. (Buck v. New York, 361 U. S. 967.)
Various attempts to secure a belated appeal of a judgment of conviction were made. In People v. Carroll (N. Y. L. J., April 12, 1957, p. 9, col. 4): “ The defendant now urges his recall for resentence on the ground that the failure of his trial counsel to file a notice of appeal constitutes a violation of due process since it denied him an appellate review of the judgment of conviction against him. He contends that a resentence will enable him to file a timely appeal.”
*186 The application was denied upon the ground that a resentence would be effective as of the date of the original judgment and would foreclose a timely notice of appeal.
In the case of People v. Williams (6 N Y 2d 193 [1959]) the defendant was convicted of robbery in 1948. He duly appealed the judgment of conviction but in October, 1948, the Appellate Division denied a motion made by the defendant to dispense with the printing of the record on the ground that the appeal lacked merit. The appeal was then dismissed for failure to prosecute.
In 1957, Williams moved to vacate the judgment of conviction in 1948 and for resentence as a first offender. The resentence was granted on April 16,1957. Williams then appealed from the judgment of conviction of April 16, 1957. After the Appellate Division held that defendant was not entitled to a review on the merits of the judgment of conviction rendered nine years previously, Williams appealed to the Court of Appeals and urged that the Appellate Division had denied him the equal protection of the laws when it refused him a review on the merits.
The Court of Appeals held (pp. 195-196): “ The time within which a defendant may appeal from a judgment convicting him is 30 days from the date of its rendition (Code Grim. Pro., § 521). After such period has expired, the defendant may not effect an extension by making a motion for resentence, on the ground that the sentence meted out was illegal, and then appealing from the order entered thereon. He may, of course, have a review of the legality of the resentence by appeal from the amended judgment thereafter entered, but his right to review the merits of the prior proceedings resulting in the adjudication of guilt was lost by his failure to appeal within the time allowed from the judgment of conviction entered on the original sentence. (See People v. Baumeister, 283 N. Y. 625; People v. Taras, 269 App. Div. 694, affd. 296 N. Y. 983, cert. denied 332 U. S. 818; People v. Faucetta, 301 N. Y. 758; see, also, People v. Sullivan, 3 N Y 2d 196, 198-199 and People ex rel. Miller v. Martin, 1 N Y 2d 406, 411, wherein we stated that, where a sentence is vacated, the validity of the prior proceedings remains unaffected.) And the consequence is precisely the same whether the defendant does or does not file a notice of appeal from the original judgment of conviction. (See People v. Taras, 269 App. Div. 694, affd. 296 N. Y. 983, cert. denied 332 U. S. 818, supra, no appeal taken; People v. Faucetta, 301 N. Y. 758, supra, appeal timely taken.) ”
Continuing the Court of Appeals said (pp. 196-197) that while, ‘' A regard for proper and orderly procedure does not sanction departure from our settled rule that a defendant may not procure a review of the original judgment of conviction by appeal *187 from an order or judgment of resentence * * * it is our view that the defendant should he privileged to raise the question involving the equal protection of the laws at the present time by an application addressed to the Appellate Division and upon such application the court should explore the validity of its 1949 dismissal of the defendant’s appeal in the light of the principles that have more recently been announced in Griffin v. Illinois (351 U. S. 12) and People v. Kalan (2 N Y 2d 278) and the cases which followed them. ’ ’
On remand to the Appellate Division, that court vacated its orders of 1949 dismissing the appeal and of 1948 insofar as it denied the defendant’s motion to dispense with printing on the appeal and granted defendant’s renewed motion to dispense with printing the record (12 A D 2d 518). After consideration of the merits, the judgment of conviction was affirmed (14 A D 2d 560).
In People v. Guhr, the defendant claimed he was prevented by the action of the Nassau County police and prison authorities from communicating with his attorney and denied his statutory right to take an appeal from the judgment of conviction. The Appellate Division granted Guhr a hearing (5 A D 2d 688, 689 [1957]) saying:
“We are convinced, however, that, if by reason of the action of the law enforcement or prison authorities, appellant has been prevented from complying with the statutory requirements for the taking and perfecting of an appeal from the judgment of conviction, he has been denied a right guaranteed by the equal protection clauses of the Federal Constitution * * * and of our own Constitution * * # and some method of reviewing the conviction must be afforded him.
“We do not suggest, at this time, nor do we determine what form such relief should take. Appellant is at least entitled to a hearing on which the facts may be determined and on which he may establish, if he can, that this right to appeal was denied him. ’ ’
Guhr was unsuccessful on the hearing held in accordance with the appellate order and the denial was affirmed on appeal (12 A D 2d 628 [1960]).
In 1960, one Gilbert M. Hairston was denied a writ of error coram nolis without a hearing. He maintained that he was prevented from mailing a notice of appeal within the 30-day period from the date of his sentence because the authorities in the State prison refused to provide postage or to allow him to borrow against future credit a sum sufficient to pay for the postage for the mailing of the notice of appeal. In support of his contention, the defendant submitted to the Appellate Division a photostatic *188 copy of a notice of appeal prepared in time and authenticated by a notary public at the State prison.
Upon that evidence of a good faith attempt to appeal, the Appellate Division ordered a hearing saying: “We do not undertake to determine at this time whether coram nobis or habeas corpus or an original motion in this court is the proper remedy, if it should be found that the defendant was wrongfully prevented from serving a notice of appeal ”. (12 A D 2d 721 [1960].)
On a further appeal to the Court of Appeals, that court outlined the remedy to be followed if defendant Hairston were successful in establishing his allegations at the hearing. The court said (10 N Y 2d 92, 94): “ If, therefore, the defendant before us proves the allegations of his petition at the hearing which has been directed by the Appellate Division, the judgment of conviction should be vacated and the defendant remanded to the Erie County Court for reimposition of the sentence (nunc pro tunc) upon the verdict already had. He would then have an opportunity of prosecuting and perfecting an appeal, since the time for taking such appeal would date from the rendition of the new judgment.”
In People v. Diblin (13 A D 2d 700 [1961]) a claim by defendant that four weeks after he was incarcerated in State prison he had a nervous breakdown which prevented his taking an appeal. This claim was denied without a hearing.
Before proceeding to the merits of the instant application, it is necessary to refer briefly to the relatively recent case of Griffin v. Illinois (351 U. S. 12, 19 [1956]) wherein the Supreme Court held that: “Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.”
In 1959, in an attempt to establish some uniformity in coram nobis applications, the Law Revision Commission proposed a statute outlining the grounds upon which coram nobis might issue. Included therein was the following: “(e) That the petitioner was deprived, by wrongful act or default of the people or of an officer, agent or employee of the state or of any political subdivision of the state, of his right to appeal from the judgment upon the conviction or obtain a review of the conviction or sentence ” (1959 Report of N. Y. Law Rev. Comm., p. 427; N. Y. Legis. Doc., No. 65[L], p. 3; italics added).
At the hearing held in the instant case, the petitioner’s evidence consisted of testimony by defendant’s father, mother and sister as to a single conversation between them and defendant’s assigned counsel (in the anteroom off the courtroom in 1948) *189 just after the jury returned its verdict of guilty and defendant’s own testimony of a conversation with assigned counsel at the time of sentence in the courtroom. No connection between the two conversations was shown at the hearing. The alleged conversation in the anteroom between the defendant’s relatives and assigned counsel consisted of a statement by the attorney that money Avould be needed to reopen the case.
Defendant’s sister said that the attorney said “ he could open a new trial but Ave would need money ’ ’. Defendant’s father said that the statement was to the effect that ‘ ‘ If you can dig up enough money, I’ll open the case up.” Defendant’s mother testified that counsel said: “ if we had more money that he would reopen the case.”
The defendant-petitioner testified that after he was sentenced on the kidnapping charge, he said to his assigned counsel,1 ‘ Hoav about appealing my case? ” and counsel answered, “ You have to get the money to buy the trial papers and other papers on appeal.”
The assigned counsel was called as a witness by the People. He testified that he had no conversation with defendant’s relatives in the anteroom after the verdict, but that he did have a conversation with the defendant, his father and mother after the defendant Avas sentenced and that he “ told defendant that he had a right to appeal and if they wanted to discuss the appeal with him to come to his office. ’ ’ He denied that he ever informed the defendant that he would have to pay for a transcript of the record. He testified that he never heard anything further from defendant or his relatives and no appeal was ever taken.
In response to questions by the court, the defendant admitted that he was not prevented by any authorities of a State prison from filing a notice of appeal and that no notice of appeal was ever prepared. He further testified that after he had earned enough money, he purchased a transcript of the testimony in 1960 and that he was never advised by anyone that he could get a transcript without cost.
The defendant Avas asked when he first learned that there Avas a statutory period in which to file a notice of appeal. He ansAvered that it was about nine years ago, some four or five years after he was sentenced.
Defendant moves for judgment on the ground that (a) he Avas improperly kept from prosecuting an appeal, and (b) he was never advised as to the possibility or the avenues afforded by law for an appeal.
Defendant also asked the court to take judicial notice of the sentence of 40 years to life “as a first felony conviction ” *190 upon a charge of kidnapping. The court will do so and rule upon this question in the course of this opinion.
The crux of defendant’s claim is that he was misled by a statement of his assigned counsel to the effect that “ You have to get the money to buy the trial papers and other papers on appeal.”
The Appellate Division (16 A D 2d 876) in ordering the hearing stated: ‘1 Here it might be found after a hearing that assigned counsel, with presumed knowledge of the law, which provides that upon filing a notice of appeal the trial minutes must be transcribed without cost to the appellant (Code Grim. Pro., § 456) and upon a proper showing of indigency that the appeal may be prosecuted upon a nonprinted record, advised appellant that lack of funds for these purposes prevented an appeal. ”
Here, there is no claim that defendant instructed his counsel to file a notice of appeal and the latter failed to do so (People v. Roberts, 25 Misc 2d 321, revd. on other grounds 13 A D 2d 719) nor a claim that defendant attempted but was prevented from filing Ms own notice of appeal (People v. Guhr, 5 A D 2d 688, affd. 12 A D 2d 628, supra; People v. Hairston, 12 A D 2d 721, supra). Defendant claims that he was mislead by his assigned lawyer’s statement to him that he would need money to (1) buy the transcript of the testimony and (2) print the record on appeal.
It seems clear that if such a statement were made by an attorney retained by the defendant, that no recognizable issue in coram nobis would be presented since no action on the part of the State constituted fraud, coercion or misrepresentation. (People v. Hernandez, 8 N Y 2d 345.)
Neither does it seem that any different rule should be followed merely because the attorney for defendant was assigned by the court. As a matter of fact, the Court of Appeals in People v. Tomaselli (7 N Y 2d 350, 356) said: “ This court has ever acknowledged that coram nobis serves a vital function and that there is a real need to assure to an accused the effective assistance of competent counsel. Full and unstinting recognition of this principle, however, must not lead us to apply an impossible standard or impose on our courts a duty impossible of fulfillment, nor should it lead us to penalize the" People solely because of an asserted failure on the part of assigned counsel to represent Ms client properly. An effective assignment there must be, but this does not mean that a court, once it has appointed a member of the bar to act for the defendant, must stand as surety for the proper performance of counsel’s professional duty.”
*191 “ Infallibility is an attribute of neither lawyer nor judge ” (People v. Kresel, 243 App. Div. 137, 142). An indigent defendant is entitled to the services of competent not infallible counsel. (People v. Girardi, 2 A D 2d 701; People v. Lee, 4 A D 2d 770; People v. Murdaugh, 13 A D 2d 509; People v. Baldwin, 15 Misc 2d 431.)
It must be kept in mind that we are in this case attempting to judge an attorney’s alleged 1948 statement in the light of current appellate procedure. “No lawyer is answerable if he is mistaken concerning a question of law on which reasonable doubt may be entertained by well-informed lawyers.” (People v. Kresel, supra, p. 142.)
Extensive research has indicated that it appears to be a fair statement that even in criminal actions, appeals in 1948 were not permitted upon abbreviated records or original records to the extent allowed since the Griffin decision (1956) by the United States Supreme Court. (See People v. Dederer, 298 N. Y. 624; People v. Hirsh, 298 N. Y. 679.)
See “ The Griffin Case — Poverty and the Fourteenth Amendment ” Bertram F. Willcox and Edward J. Bloustein (43 Cornell L. Q., pp. 22-23): “ The cost of printing briefs and records on appeal is another item which seems quite clearly to fall within the ambit of the Griffin decision, although the United States Supreme Court did not expressly consider it. New York and a minority of states require printing although there are some exceptions, since 1954 the appellate division has discretion to relax the printing requirements. The third department has allowed typewritten papers since that year. Motions, in forma pauperis, for leave to appeal on the original transcript and typewritten briefs have been granted sparingly. However, since Griffin, we have reason to believe that these motions are being treated more liberally.” See, also, “Justice Lost — By What Appellate Papers Cost.” (33 N. Y. Univ. L. Rev., pp. 934-974.)
“ Extension in New York of the Buie in Griffin v. Illinois ” (25 Albany L. Rev., p. 247). (People v. Todak, 250 App. Div. 796 [1937]; Code Crim. Pro., § 538.)
Prior to 1935, a poor person was not accorded the privilege of appealing as such. Section 558 of the Civil Practice Act was then amended (L. 1935, ch. 722) to permit a poor person to appeal as such. In addition, such person might avoid the necessity of printing the record and briefs and “ submit the same in typewriting with such number of legible copies as shall furnish each appellate judge or justice with one copy thereof,” *192 See, also, rules 234 and 235 of the Rules of Civil Practice (amd; Aug. 1, 1954 to permit each Appellate Division to adopt rules which shall “ supersede the provisions of this rule to an extent inconsistent therewith ”).
Following the Griffin case, People v. Brown (3 A D 2d 696) permitted an appeal to be taken on the original record and on handwritten briefs. (See, also, People v. Borum, 8 N Y 2d 177 [1960].)
That attorneys generally were unfamiliar with any inherent power in the appellate court to dispense with printing generally under the statute and rules prompted a memorandum to that effect in Eagle Contrs. of Utica v. Black (5 A D 2d 954).
Assuming, arguendo, that assigned counsel in 1948 told defendant that he would need money to purchase the “ trial papers and other papers on appeal ”, and that such statement was erroneous although honestly made, does it necessarily follow that a vacatur of the sentence must result? If it does, then it leads the court “to penalize the People solely because of an asserted failure on the part of assigned counsel to represent his client properly “ and makes the court ” stand as surety for the proper performance of counsel’s professional duty ” (People v. Tomaselli, 7 N Y 2d 350, 356, supra).
This case appears to be clearly distinguishable from the Hairston case (10 N Y 2d 92, supra). There, the prison authorities prevented the mailing of a properly and timely notice of appeal from a judgment of conviction. Here, no action of the State, or of an officer, agent or employee, prevented the filing or mailing of the notice of appeal.
To grant defendant’s application would clearly require a finding that assigned counsel becomes an officer, agent or employee of the State upon his assignment to defend an indigent defendant. In such ease, misrepresentation by assigned counsel to a defendant concerning the maximum and minimum range of punishment or as to an alleged sentence promise made by a trial judge or prosecutor to such counsel and conveyed by him to the defendant would require the vacatur of any judgment of conviction based upon a plea of guilty.
After hearing the testimony, it is the finding of the court that the defendant-petitioner has not sustained the burden of proof required and has not shown that he was prevented from complying with the statutory requirements for the taking and perfecting of an appeal from his judgment of conviction.
In addition, the application in this case is open to a strong suspicion that it has been fashioned to secure the advantage of recent decisions of our appellate courts. No complaint was *193 registered by the defendant for almost 13 years until March of 1961. It is most significant that in December of 1960, a decision was rendered in People v. Hairston (supra) directing a hearing on a petition for coram nobis.
The credibility of the defendant at the hearing is open to question and this court accepts the testimony of assigned counsel that no such statement was made by him as worthy of belief.
Defendant has also applied for an opportunity to reopen the hearing for the purpose of this court making a determination as to whether merit would attach to an appeal from the original judgment of conviction. This is unnecessary and the application is denied.
The defendant has available a transcript of the original trial testimony and proceedings. If an appeal is allowed, it is a matter of right. The question of merit will only arise on the permission to appeal on the original record as a poor person. In view of the recent decisions which allow poor person relief on appeal without a showing of merit in coram nobis applications, the question of a showing of merit is not insurmountable. In any event, merit must be found by the appellate court and not by the trial court. Insofar as this question is concerned, this court will assume possible merit to exist. For example, see People v. Foley (8 N Y 2d 153 [1960]).
The defendant asks the court to consider the fact that he was sentenced as a first offender, to a term of 40 years to life. To bring this contention into proper perspective, it should be noted that it is the contention of defendant and there seems little doubt that this is true, that although the indictment charged him with a previous offense, proof of that fact was not adduced on the trial and upon motion of the District Attorney that allegation was dismissed by the Trial Judge. There is also nothing to indicate that thereafter defendant was arraigned upon a District Attorney’s information as a second offender.
While mere excessiveness or harshness of sentence is not ground for coram nobis relief, an improper sentence is ground for relief by way of correction of sentence. Even if this were granted in this case, it is doubtful that this would afford an opportunity for defendant to secure his appeal from the original judgment of conviction.
The question is therefore presented whether the sentence imposed on the defendant in 1948 was proper.
Section 1250 of the Penal Law in 1948 (as it does now) provided that where the person kidnapped is returned alive before the trial, a convicted defendant1 ‘ shall be punished by imprisonment under an indeterminate sentence, the minimum of which shall *194 be not less than twenty years and the maximum of which shall be for the natural life of such convicted person.”
Section 2189 of the Penal Law provides that a first offender (one never before convicted of a crime punishable by imprisonment in a State prison, or, though previously convicted of such a crime is not punishable as a multiple offender) may not receive a minimum sentence exceeding one-half the longest period of imprisonment. This provision however did not in 1948 (nor now) apply to this defendant for the reason that there was and is exempted from this protection of first offenders as to sentence the crimes of “murder first or second degree or kidnapping.”
In the absence of some specific provision of law limiting the discretion of the Trial Judge, it would appear that the sentence of 40 years to life imposed by the late 'County Judge Ezra IIanagan in 1948 was a proper sentence and therefore may not be now disturbed.
The application is in all respects denied.