**UNITED STATES of America,**
Appellee,

v.

**Alexander Henry SMITH, Appellant.**
**No. 9219.**

United States Court of Appeals
Fourth Circuit.

Argued May 1, 1964.

Decided Sept. 21, 1964.

Ronald P. Sokol, Charlottesville, Va. [Court-assigned counsel], for appellant.

William Medford, U. S. Atty. (Robert J. Robinson and James O. Israel, Asst. U. S. Attys., on brief), for appellee.

Before HAYNSWORTH and BOREMAN, Circuit Judges, and HUTCHESON, District Judge.

BOREMAN, Circuit Judge.

On February 3, 1961, Alexander Henry Smith signed written waivers of counsel and entered separate pleas of guilty to six indictments and informations charging him with burglarizing three United States Post Offices and forging and uttering a large number of stolen postal money orders.[1] He was sentenced to a total of twenty years' imprisonment. On August 20, 1962, Smith filed a motion to vacate sentence under 28 U.S.C.A. § 2255 alleging in substance that he had not competently waived counsel, that his guilty pleas were involuntarily entered and that he was denied an impartial hearing. Counsel was appointed to represent Smith and on February 28, 1963, a hearing on the motion was held before the Honorable Wilson Warlick, the judge who had imposed sentence. By order of the court, Smith was returned from the federal penitentiary at Leavenworth, Kansas, where he was serving sentence, and testified at some length in support of his allegations. The purport of his testimony was that although he knew that he was entitled to retain counsel of his own choosing, he was not aware that if he indicated his desire for the services of an attorney the court would appoint counsel at no expense to him. Smith also testified that he was led to believe by a United States postal inspector who investigated the case that if he pleaded guilty to the various counts against him certain charges against his half-brother, David Anspach,[2] (one of Smith's two codefendants in the original proceedings) would be dropped. Smith's testimony was contradicted in material respects by several government witnesses. The transcript of the original proceedings contained only the following statements relative to the issue of waiver of counsel:

"ASST. U. S. ATTY. MONTEITH:

If your Honor pleases, two of these defendants Mr. Smith and Mr. Anspach do not have attorneys, if the Court pleases.

"THE COURT:

Do you both want a lawyer appointed to defend you? Have they signed a release?

"ASST. U. S. ATTY. MONTEITH:

Yes sir. Let the record appear that the defendants have waived counsel by written waiver in open court. Let the record show that they were advised by the Court of their right to have counsel appointed, and they declined to accept counsel tendered by the Court."

The testimony of several witnesses at the hearing of the § 2255 motion indicated that the transcript was incomplete on this point and that it did not contain much of the discussion which took place between the court and Smith, his codefendants and one of his codefendants' counsel. In its memorandum opinion the District Court noted this defect in the transcript:

"Quite frankly it seems that the stenographic notes of the Court Re-

---

1. These offenses constituted violations of 18 U.S.C.A. § 2115 and 18 U.S.C.A. § 500, respectively.

2. Smith was arraigned jointly with David Anspach and Mrs. Patricia Hall who also entered pleas of guilty to charges of uttering forged postal money orders. Mrs. Hall was represented by retained counsel.

porter fail to show much of that which transpired at this point. Several statements of the court to petitioner and his associates and their answers thereto seem not to be definitely found in the record. The brevity, less than one page, clearly indicates that a failure came about to actually record the events that took place; thus a recapitulation of the action had has been made necessary. For that reason the hearing was ordered and all effort made to get the truth of that which transpired from those present in court and having a part thereof. * * * "

The court concluded that Smith had knowingly and intelligently waived counsel, that he had voluntarily pleaded guilty with a full understanding of the charges against him and that none of his constitutional rights had been violated; accordingly, it dismissed the motion to vacate sentence.

The principal contention urged by Smith here is with respect to his alleged failure to competently waive counsel. In discussing this issue the District Court, after noting that Smith had previously been advised by the deputy marshal of his right to counsel, stated:

" * * * From my own recollection, my notes made, and that of witnesses who testified in the hearing, I find that the petitioner and Anspach were again fully advised that

if they still wanted an attorney, following their statements made on some several occasions prior thereto, that they did not desire counsel, that one would even at that time have been assigned, and made available to them. Here again they stated that neither desired counsel. * * * "

Smith complains that the same district judge who accepted his pleas of guilty and imposed sentence also decided the motion to vacate sentence under 28 U.S. C.A. § 2255. No affidavit of bias or prejudice was filed [3] but Smith argues here that the trial judge had an interest in finding that the proceedings were conducted in a constitutional manner which should have disqualified him from passing upon the motion.[4]

In Carvell v. United States, 173 F.2d 348 (1949), this court squarely rejected a similar argument, stating:

"Complaint is made that the judge who tried the case passed upon the motion. Not only was there no impropriety in this, but it is highly desirable in such cases that the motions be passed on by the judge who is familiar with the facts and circumstances surrounding the trial, and is consequently not likely to be misled by false allegations as to what occurred. It was to avoid the unseemly practice of having attacks upon the regularity of trials made before another judge through resort to

3. 28 U.S.C.A. § 144 provides in part:
"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."

4. In his original brief filed herein, Smith contended that the hearing of his motion to vacate sentence under 28 U.S.C.A. § 2255 by the same judge who had presided at his original "trial" constituted a denial of due process of law in violation of the Fifth Amendment. Thereafter the Supreme Court decided Ungar

v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), and rejected the contention of a defendant in a contempt proceeding that he had been denied due process of law because the judge who presided at the contempt hearing was the same judge who had presided at the trial in which defendant's contemptuous conduct occurred. In his reply brief Smith conceded that the Ungar decision foreclosed his constitutional argument and modified his contention by urging that the practice of permitting the trial judge to preside at collateral proceedings attacking the validity of the trial is undesirable and should be discouraged by this court through exercise of its federal supervisory powers.

habeas corpus that section 2255 of Title 28 was inserted in the Judicial Code." Id. at 348–349.

■ Smith concedes that the decision in the Carvell case is directly in point but argues that it is unsound and should be overruled. We reject this argument. An analysis of section 2255, its legislative history and the cases subsequent to Carvell which have interpreted it, convinces us that one of the primary purposes of that section was to make it possible for the judge to rule upon motions in the nature of habeas corpus petitions attacking the validity and regularity of prior proceedings before him. Section 2255 expressly requires that motions thereunder be addressed to "the court which imposed the sentence." [5] Prior to the enactment of section 2255 the procedure in habeas corpus litigation in the federal courts contained a number of undesirable features and lent itself to frequent abuse.[6] The deluge of groundless habeas corpus applications which followed the writ's broadened application by judicial decisions [7] required the Judicial Conference of the United States to take note of the problems created thereby. The late John J. Parker, former Chief Judge of this court and a member of the panel which subsequently decided the Carvell case, was named chairman of a committee appointed by the Conference to study problems inherent in the habeas corpus procedure and to recommend corrective legislation. One of the chief sources of abuse of the former procedure was the requirement that habeas corpus petitions be filed in the district where the prisoner was confined. In an article entitled Limiting The Abuse of Habeas Corpus, 8 F.R.D. 171, 172–173 (1949), Judge Parker described some of the objectionable consequences of that requirement which section 2255 was designed to eliminate:

> "* * * There was no provision for the trial judge to supplement the record or even to furnish a statement as to what had occurred at the trial. If heard at all in the habeas corpus litigation, it was required that he be heard as an ordinary witness. From this resulted the unseemly spectacle of federal district courts trying the regularity of proceedings had in courts of coordinate jurisdiction and of state trial judges appearing as witnesses in defense of the proceedings had in their courts. * * *"

As stated in United States v. Edwards, 152 F.Supp. 179, 182 (D.D.C.1957),[8] "an intolerable situation developed of having

---

5. In pertinent part 28 U.S.C.A. § 2255 provides:

    "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

6. See, e. g., United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952); United States v. Edwards, 152 F.Supp. 179 (D.D.C.1957), aff'd 103 U.S. App.D.C. 152, 256 F.2d 707 (1958), cert. denied, 358 U.S. 847, 79 S.Ct. 74 (1958). See generally Parker, Limiting The Abuse of Habeas Corpus, 8 F.R.D. 171 (1949).

7. See Parker op. cit. supra note 6.

8. Aff'd 256 F.2d 707 (1958), cert. denied, 358 U.S. 847, 79 S.Ct. 74 (1958). After discussing the abuses to which the former procedure was subject, the court in Edwards stated that the purpose of § 2255

    "was to transfer from the judge who might have issued a writ of *habeas corpus* to the judge who originally tried the case, the consideration of matters that had theretofore been litigated in *habeas corpus* proceedings after a conviction in the Federal courts. This object was attained by permitting a motion to set aside and vacate the judgment and sentence to be made before the trial judge, as a substitute for the writ of *habeas corpus*, application for which had to be made before a judge for the district in which the petitioner was confined." Id. at 152 F.Supp. 182–183.

the testimony of the trial judge and the word of a convicted felon pitted against each other. This result was manifestly incompatible with the dignity of the Federal judiciary and did not enhance respect for the courts on the part of evildoers."

The requirement that habeas corpus petitions be filed in the district where the prisoner was confined also gave rise to serious administrative problems. The records and files of the trial court were not readily available from which it could be determined whether petitions were frivolous. Since evidence dehors the record could be presented, it was necessary in many instances that court officials, including the trial judge, be transported to districts far removed from their own, thus seriously interrupting the business of the court in which the original proceedings were had, in order to contradict baseless allegations as to what had transpired at trial. Obviously such a procedure was expensive, cumbersome and highly unsatisfactory.

In view of the large number of districts which then had only one judge, Congress obviously considered it desirable that district judges be required to review proceedings over which they had presided. Several cases in addition to the Carvell case have interpreted section 2255 as authorizing the sentencing judge to entertain and determine motions filed thereunder. See Deitle v. United States, 302 F.2d 116, 118 (7 Cir. 1962); Simmons v. United States, 302 F.2d 71 (3 Cir. 1962); Martin v. United States, 273 F.2d 775, 777 (10 Cir. 1960), cert. denied, 365 U.S. 853, 81 S.Ct. 818, 5 L.Ed.2d 816 (1961); United States ex rel. Leguillou v. Davis, 212 F.2d 681, 684 (3 Cir. 1954); Clark v. Memolo, 85 U.S. App.D.C. 65, 174 F.2d 978, 982 (1949); United States v. Edwards, 152 F.Supp. 179 (D.D.C.1957), aff'd, 103 U.S.App. D.C. 152, 256 F.2d 707 (1958), cert. denied, 358 U.S. 847, 79 S.Ct. 74 (1958); Dillon v. United States, 307 F.2d 445, 453 (9 Cir. 1962) (dissenting opinion). We conclude that the district judge was not disqualified merely because he had presided at Smith's arraignment and had imposed sentence.

Smith next contends that, in any event, the judge should have refrained from ruling upon the motion because he was a material witness to what had transpired at the original proceedings and suggests that when the judge relied in part upon his own memory to supplement the record he, Smith, was not accorded due process of law. In this connection Smith points to 28 U.S.C.A. § 455 which provides in part that "[a]ny justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel [or], is or has been a material witness, * * *." What we have said above is largely dispositive of this argument. It would be anomalous, indeed, having determined that the purpose of section 2255 was to permit the trial judge, because of his familiarity with the proceedings and ability to supplement the record, to pass upon motions thereunder, now to ascribe to Congress the intention to disqualify any judge possessing that familiarity with the proceedings from passing upon the motion. We are of the opinion that sections 2255 and 455 of Title 28 should be construed together. So construed, it is apparent that the district judge here was not a material witness within the meaning of the latter section. Cf. United States v. Hughes, 325 F.2d 789 (2 Cir.), cert. denied, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178 (1964); Simmons v. United States, 302 F.2d 71 (3 Cir. 1962); Davis v. United States, 210 F.2d 118 (8 Cir. 1954); Dillon v. United States, 307 F.2d 445, 453 (9 Cir. 1962) (dissenting opinion).

In support of his argument to the contrary, Smith relies strongly upon two cases decided by the Court of Appeals for the Second Circuit, United States v. Halley, 240 F.2d 418, cert. denied, 353 U.S. 967, 77 S.Ct. 1052, 1 L.Ed.2d 917 (1957), and United States v. Valentino, 2 Cir., 283 F.2d 634 (1960). Neither case is in point. In United States v. Halley, supra, the appellant had filed a motion in the

nature of coram nobis to vacate a judgment and sentence. The hearing on the motion was held before the judge who had presided at the original trial. Although the appellant was the only witness, the district judge refused to credit his testimony that he was not advised of his right to counsel and had not waived it, noted that it was always his practice to advise the accused of his right to counsel, and denied the motion. Although the Court of Appeals suggested that it might be advisable to have such cases heard by some judge other than the one who had presided at the time of plea and sentence, it *affirmed* the action of the District Court. United States v. Valentino, supra, also involved an appeal from a denial of a motion in the nature of coram nobis. The Court of Appeals held that the appellant was entitled to a hearing to determine whether at the time of his trial he was competent to understand the proceedings against him and whether he had waived counsel. Pointing out that because of the lapse of time since the original trial (nearly thirty years) it might be difficult to determine what had transpired, the court merely stated that "[t]he hearing should be held before a judge who will not be required to testify as a material witness in the proceeding." Significantly, neither Halley nor Valentino mentioned section 2255 or section 455.[9]

In a recent case in which the district judge had actually testified as a witness, the Court of Appeals for the Second Circuit rejected the defendant's contention that the judge should have disqualified himself under 28 U.S.C.A. § 455. United States v. Hughes, 325 F.2d 789 (1964). After noting that the judge's remarks were not relevant to the primary issues in the case, the court stated:

" * * * Moreover, the statements in the cases upon which defendant relies [Halley and Valentino] were rather in the nature of advice to the lower courts on remand than direct holding on the points involved. Since the literal terms of 28 U.S.C. § 455 (1958) require disqualification only if the judge *is* a witness, we think the Halley and Valentino cases state what is merely a rule of good practice, the violation of which does not require the finding of an abuse of discretion when in fact the judge does not participate as a material witness, and there are considerations of efficient judicial administration which favor his presiding, such as, in this case, Judge Herlands' familiarity with matters relevant to sentencing through having presided over the United Dye case. * * *" Id. at 792–793.

In the case at bar, the district judge did not testify as a witness. His recollection of what transpired was only corroborative of the testimony of several witnesses and served to correct a defect in the transcript caused by an error of the court reporter.

█ Clearly lacking in merit is Smith's contention that the failure of the court reporter to accurately complete the trial transcript entitles him to a new trial. Although violative of 28 U.S.C.A. § 753,[10] this conceded failure was not such an error as to entitle Smith to relief in a collateral proceeding under section 2255. See Brown v. United States, 314 F.2d 293 (9 Cir. 1963); United

9. Another case upon which Smith relies is In re Murchison, 349 U.S. 133, 75 S. Ct. 623, 99 L.Ed. 942 (1955), where the Court held that due process was denied when a judge who, under Michigan law, had acted as "a one-man grand jury" later adjudged in contempt two witnesses who had appeared before him in that capacity. That case is plainly distinguishable from the case at bar. The Court there emphasized that the judge had been a part of the accusatorial proc-

ess and could not divorce himself from that role. Unlike the situation here, the grand jury proceedings in Murchison were secret proceedings; thus no witnesses who might contradict the judge's recollection were available.

10. In part, 28 U.S.C.A. § 753 provides that the court reporter "shall record verbatim by shorthand or by mechanical means: (1) all proceedings in criminal cases had in open court; * * *."

States v. Taylor, 303 F.2d 165 (4 Cir. 1962); cf. Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).

Finally, Smith contends that the evidence at the hearing below does not support the District Court's conclusion that he had competently waived counsel. This contention was carefully and extensively reviewed in the District Court's opinion. Although certain guidelines for the District Courts have been established,[11] the ultimate issue in a case such as this is simply whether the accused knowingly and intelligently chose to waive counsel and proceed pro se. See, e. g., Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Twining v. United States, 321 F.2d 432 (5 Cir. 1963); Aiken v. United States, 296 F.2d 604 (4 Cir. 1961). Resolution of this question depends "in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, supra, 304 U.S. at 464, 58 S.Ct. at 1023. The failure of the record to show that the accused intelligently waived counsel does not invalidate the judgment; rather, in proceedings under section 2255 the burden is upon the accused to establish that he *did not* waive legal assistance. See Moore v. Michigan, 355 U.S. 155, 161–162, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); United States v. Morgan, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954); Post v. Boles, 4 Cir., 332 F.2d 738; Aiken v. United States, supra, 296 F.2d at 607.

At the time of his trial in 1961 Smith was nearly forty years old. He was no stranger to the courts and legal processes. The F.B.I. records introduced at the trial disclosed at least five previous felony convictions, one involving a post office burglary. On at least one occasion, according to Smith's testimony, he had been represented by counsel. As a youth he had spent over four years in a boys'

vocational school and several years of his adult life had been spent in three different penitentiaries. Both at his original trial and in the hearing below, Smith displayed a keen understanding of what was transpiring. As stated by the District Court:

" * * * He claims to only have a sixth grade education, yet the letters he writes, the petition which he prepared, the language which he uses, and the well nigh perfect English that he speaks are all indicative of the fact that he is an individual of parts and that he not only intelligently understands but fully appreciates his position in life. * * * "

The record discloses that three days after his arrest in Forest City, North Carolina, on December 6, 1960, after being advised by a postal inspector of his right to counsel and his right to remain silent, Smith fully confessed orally and in writing that he committed the crimes with which he was charged. During several conversations with the postal inspector and Teal, chief deputy marshal, Smith expressed a desire to waive trial on the several indictments pending in *other* districts, to plead guilty and to dispose of all of the cases in the Western District of North Carolina. After receiving copies of the indictments and informations, he signed requests for transfer under Rule 20 of the Federal Rules of Criminal Procedure each of which contained the statement that he had been advised of his constitutional rights "including the right to advice of counsel." Mr. Teal, who conversed with Smith on several occasions in connection with his request for transfer of the cases, testified that on more than one occasion he informed Smith and his codefendant, Anspach, of their right to counsel, and that after informing the court that Smith and Anspach desired to plead guilty and did not have counsel, at the court's request he again advised them that if they desired counsel they should

---

11. See, e. g., Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); Aiken v. United States, 296 F.2d 604 (4 Cir. 1961).

so advise the court, in writing, in order that counsel could be appointed. Smith admitted at the hearing below that he came into court intending to plead guilty.

Although the transcript of arraignment and sentencing is incomplete in this respect, the testimony of several persons who witnessed the proceedings indicates that Smith was again fully advised by the court of his right to counsel and stated that he did not desire counsel prior to entering his guilty pleas. Mr. Fisher, who had been counsel for Mrs. Hall, one of Smith's codefendants at the original proceedings, testified that he had some discussion with the court as to whether his representation of Smith would in any way conflict with his representation of his client. He stated that he actually conferred with Smith for approximately thirty minutes, advised him briefly of the nature of the charges and told him that he could receive a total sentence of over one hundred years. After indicating orally that he did not desire counsel, Smith signed a written waiver of counsel in each of the cases.[12] Mr. Monteith who, at the time of Smith's arraignment, was Assistant United States Attorney, testified at the hearing below:

"I remember quite well that I took sufficient time to explain to the defendants [Smith and Anspach] what it was they were signing, and they understood thoroughly what they were signing when they signed the waivers of counsel.

"I wouldn't be positive, but it is my best impression that even after the conversation with the Court, I told them that the Court would still appoint counsel for them if they wanted it, and they said no, they wanted to waive counsel and they wanted to plead guilty to everything we had them charged with."

 In these circumstances, Smith's unsupported testimony that he did not know that counsel would be provided at no expense to him seems incredible. Even without considering the district judge's recollection, which we believe should be accorded some weight,[13] the record amply supports the District Court's conclusion that Smith fully understood his right to counsel and deliberately and intelligently elected to waive that right. Other questions raised by Smith have been considered and found to be without merit.

Affirmed.

12. Each of the written waivers stated:
"Alexander Henry Smith, the above named defendant, having been furnished with a copy of the indictment or information, advised of the nature of the charge against him, and informed of his rights, appears in court without counsel and the Court having advised him of his right to counsel of his own selection or to be assigned by the Court, hereby, in open court, waives his right to representation by counsel and elects to proceed without counsel."

13. See Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), and the dissenting opinion of Justice Clark at 368 U.S. 500 n. 4, 82 S.Ct. 517.