Petition of Josette GEISSER, Divorced Bauer, a/k/a Paulette Louise Fallai.

Josette Claire BAUER, nee Geisser, a/k/a Paulette Louise Fallai,
Petitioner-Appellee,

v.

UNITED STATES of America,
Respondent-Appellant,

Alfred Keller, Consul General of the Government of Switzerland,
Intervenor-Appellant.

No. 76-3324.

United States Court of Appeals,
Fifth Circuit.

June 22, 1977.

Robert E. Herzstein, Brooksley E. Landau, Washington, D. C., for Keller.

Robert W. Rust, U. S. Atty., Miami, Fla., Murray R. Stein, Atty., Jerome M. Feit, Katherine Winfree, John P. Rupp, Attys., U. S. Dept. of Justice, Washington, D. C., for United States.

William C. Marchiondo, Albuquerque, N. M., for Geisser-Bauer.

Before TUTTLE, WISDOM and COLEMAN, Circuit Judges.

Wisdom

WISDOM, Circuit Judge:

This is the second time this Court has been asked to balance the rights of this petitioner to the plea bargain she made with the United States Government against the obligations of the Government under an extradition treaty with Switzerland. The facts of the case are set out in full in the opinion by Chief Judge Brown issued in the first appeal. *Geisser v. United States*, 5 Cir. 1975, 513 F.2d 862. The petitioner, Josette Claire Bauer, nee Geisser, escaped from a Swiss prison where she was serving a sentence for patricide. On August 31, 1967, she and an accomplice, Willy Lambert, were arrested in Miami for attempting to smuggle 28 pounds of heroin into this country as part of an international drug smuggling conspiracy. To gain information from them and their assistance to the prosecutor, representatives of the Justice Department and the local United States Attorney's office engaged in plea negotiations. Bauer and Lambert consented to plead guilty to charges carrying lesser sentences in return for divulging their knowledge of the domestic and international drug conspiracy in which they were involved, and to testify against their superiors in the ring. The United States Government agreed to reindict them for lesser offenses, to secure their parole after three years, and to use its best efforts to prevent the extradition of the two to Switzerland or France. The last part of the bargain became necessary to gain the cooperation of Bauer and Lambert because they were "obsessed by their intense fear of reprisals—a fear all the agents concerned accepted as well-founded". *Geisser v. United States*, 513 F.2d at 864. Bauer and Lambert kept their bargain. Indeed Josette Bauer was a particularly valuable witness because of her "remarkably retentive memory". Before the plea bargaining was concluded the Swiss Government sought and obtained, on November 2, 1967, in the Southern District of Florida an order certifying the extraditability of Bauer.

In her habeas corpus petition Josette Bauer seeks to compel the Government to keep its part of the bargain; she asks for specific enforcement of the plea agreement and an injunction against the extradition order. In the initial response to the petition Judge Mehrtens, who also presided over the guilty pleas of Bauer and Lambert, held an extensive hearing. He concluded that the United States Government failed to keep both the parole and extradition aspects of the bargain. Judge Mehrtens found that there was a definite agreement that Bauer would not serve more than three years in prison and that she would not be deported to France or Switzerland.

In the first appeal in this case the United States Government did not challenge any of the findings of fact of the district court except the part of its decision that found an absolute agreement to prevent extradition to France or Switzerland. The Department of Justice has contended that its commitment to Bauer and Lambert was no more than to use its "best efforts" to prevent Bauer's extradition.

This Court, through Judge Brown, decided that it needed "an authoritative declaration of the position of *the* United States Government—not just that of one or more departments or agencies". *Geisser v. United States*, 513 F.2d at 869. It reasoned:

> we are not at all sure that a Secretary of State who is instructed by the chief legal officer of the nation that failure to keep the bargain is a plain violation of Bauer's constitutional rights would persist in the steps to effectuate extradition. (Footnote omitted.)

*Id.* The Court rejected the Government's claim that Bauer's habeas corpus action was not ripe and that the district court judgment should be vacated because of the failure to join the Confederation of Switzerland as an indispensable party under Rule 19(a), F.R.Civ.P. Instead the Court vacated the district court's order and remanded the case for further proceedings, if they became necessary:

> Several things are to be accomplished by and on the remand. The Government shall, after consideration of the promise made and the failure to keep all or part

of it by the respective officials at the highest levels, state unequivocally the position of the United States Government. In the event that position does not result in the effectual release of Bauer from the restraints or prospects or threats thereof, the District Court shall conduct further hearings after allowing fullest discovery on all issues and particularly on the question of just what has been done with the promise "to use our best efforts" and the reasons why, if any, steps have not been taken or why they have been ineffectual. (Footnote omitted.)

*Geisser v. United States,* 513 F.2d at 871–72. Thus, the United States Government was given a second chance to keep its bargain, preferably through diplomatic channels without further judicial action, or to explain why it could not prevent Bauer's extradition if that was the result of its efforts.

On remand Judge Mehrtens again held a hearing on the question of Bauer's extradition.[1] Although not required to do so by this Court, the district judge also permitted the Consul General of Switzerland to intervene in the action. The record in this case contains documentary evidence on the efforts of the Departments of Justice and State to prevent Bauer's extradition to Switzerland or France. The first step was taken by the Department of State in a letter written on October 3, 1975, by Deputy Attorney General Harold R. Tyler, Jr., to Secretary of State Henry A. Kissinger.[2] The letter described this Court's negative reaction to the Justice Department's failure

---

1. The petitioner's counsel conceded to Judge Mehrtens that the Government's failure to make a recommendation to the Board of Parole for Bauer's release after three years is moot because she is no longer in prison.

2. 10/3/75

   Honorable Henry A. Kissinger
   Secretary of State
   Washington, D. C.
   Dear Mr. Secretary:
   A recent decision of the United States Court of Appeals for the Fifth Circuit requires that we resolve a matter of mutual interest to our Departments.
   The Court of Appeals believed the case was properly characterized as one involving "the great United States going back on its word in a plea bargain made by the Department of Justice which assured the Government of vital indispensable evidence leading to conviction of principals in a grand scale international heroin importing conspiracy". The Court refers to an agreement negotiated between this Department and one Josette Geisser Bauer, a Swiss citizen.
   In 1964, Josette Bauer escaped from a correctional institution in Bern, Switzerland, where she was confined for patricide. In August 1967, she and a confederate were apprehended in Miami on charges of smuggling heroin into the United States. Because the heroin seizure was decidedly large-scale and because Bauer and her accomplice were mere couriers, this Department entertained a greater intelligence than prosecutorial interest in these individuals. Once we had ascertained that she possessed valuable information, the Department began negotiating a mutually satisfactory agreement with Bauer and her attorney. Subsequently, in November of 1967, Switzerland, on the basis of the incompleted sentence for patricide, obtained a court order certifying that Bauer was subject to extradition. As part of the agreement eventually concluded between Bauer and our representatives, we agreed to use our best efforts to assure that she would not be returned to Switzerland by our Government, despite the existence of this outstanding order of extradition. For her part, Bauer gave crucial testimony in subsequent trials and provided us with intelligence information that was characterized as invaluable by our officials.
   In August of 1973, Bauer brought a successful action in the United States District Court for the Southern District of Florida for specific performance of this agreement. The District Court entered an order forever estopping the Government from enforcing the order of extradition outstanding against her. The Court in effect construed the commitment to Bauer as an absolute guarantee that she would not be extradited. Its basis for doing so was her stated recollection of the agreement and the view of our representative that she could have received this impression as the commitment was embellished by representations as to the probable success of our efforts on her behalf as well as assurances that "Washington keeps its deals".
   For the primary purpose of asserting Switzerland's interest in these proceedings, the Justice Department appealed the District Court order. However, the Court of Appeals rejected our argument that the order was invalid because Switzerland was an indispensible party to these proceedings affecting her interests and should therefore have been joined. The Court also found it unnecessary

to do anything to keep its bargain with Bauer. Deputy Attorney General Tyler conceded: "The Court of Appeals was correct in finding that we had made no effort to prevent Bauer's return to Switzerland." In addition, he concluded that "all interests would be advanced by a decision not to execute the outstanding extradition order". On March 19, 1976, Deputy Secretary of State Robert S. Ingersoll responded to the Tyler letter.[3] He stated that the extradition treaty between the United States and

to decide whether the commitment to Bauer involved an absolute guarantee that she would not be extradited, apparently believing that her constitutional rights had been violated *by failure of the Government to make any effort* to assure that she was not returned to Switzerland. Thus, the Court expressed the view that foreclosing extradition was in all probability *the only remedy available to her at this time.*

However, rather than affirming the District Court *order of estoppel*—which would have been not only a bad precedent but would have involved, as the Court noted, the judiciary "treading upon delicate international relations," the Court of Appeals has remanded the case to the District Court for "an authoritative declaration of the position of the United States Government" as regards its intent with respect to enforcement of the extradition order.

The Court of Appeals has made quite plain its hope that the matter will not have to be resolved by the judiciary. Equally plain is the Court's inclination to uphold, if necessary, the commitment to Bauer, presumably by affirming an order of estoppel on the theory that individual constitutional rights are superior to the Government's treaty obligations. Given the Court's conclusion that a promise was made but not fulfilled, we find this theory persuasive and, accordingly, request that the outstanding order for Bauer's extradition not be executed.

The Court of Appeals was correct in finding that we had made no effort to prevent *Bauer's return to Switzerland.* Any impetus to do so was lost when, in October of 1969, she escaped from prison where she was confined pursuant to a sentence received on her guilty plea to reduced charges, which also constituted part of our agreement with her. The Court, however, was receptive to Bauer's position that the escape was effected only because she greatly feared being returned to Switzerland and had been told that the Government, notwithstanding its commitment in this regard, intended to extradite her to Switzerland.

We are not unmindful that Switzerland's interests have been compromised and have taken steps to ensure that a problem of this nature does not recur. Instructions have been issued that any future agreements regarding such matters must be approved in advance by this Department.

However, we must of course deal with the matter in its present posture. We would not wish to countenance a plain violation of Josette Bauer's constitutional rights, and in the circumstances presented, it is our view that *all interests would be advanced by a decision not to execute the outstanding extradition order.*

We share the hope of the Court of Appeals that this matter will not ultimately have to be resolved by the judiciary, though we have little doubt as to what its resolution will be should it come to that. Therefore, I would be most appreciative of your assistance in resolving this vexing problem which creates difficulties for you in our relationship with Switzerland as well as difficulties for the Department of Justice in its relationship with the judiciary.

We are enclosing for your further consideration a copy of the opinion of the Court of Appeals and will attempt to continue further court proceedings pending our receipt of your advice at your earliest convenience.

     Sincerely,
     Harold R. Tyler, Jr.
     Deputy Attorney General

**3.**
             March 19, 1976
[The Honorable Harold R. Tyler, Jr.,
 Deputy Attorney General]
Dear Mr. Tyler:

Your letter of October 9, 1975, relating to the pending extradition of Josette Geisser Bauer has been carefully reviewed by this Department. We have also carefully examined the Extradition Treaty between the United States and Switzerland signed at Washington May 14, 1900 (31 Stat. 1928) and its two supplements (49 Stat. 3192) and (55 Stat. 1140).

While we understand the difficulty presented by the decisions of the courts in this matter and are sympathetic to your concern, which we share, that this matter affecting international relations will be resolved by the judiciary, the treaty in question does not provide discretionary authority to the Secretary of State to withhold extradition properly requested by the Government of Switzerland. Article I, for example, states that the "Government of the United States of America and the Swiss Federal Council bind themselves mutually to surrender such persons as, being . . . convicted of any of the crimes or offenses enumerated hereinafter in Article II . . . ." Article II states that

the Government of Switzerland provides no discretionary authority for the Secretary of State to withhold extradition. Deputy Secretary of State Ingersoll enumerated the actions taken by the Department as part of the "best efforts" obligation. On October 24, 1975, in a note to the Embassy of Switzerland, the State Department simply requested "the views of the Embassy" on two letters, including the one from Tyler, that had been transmitted to the Department on the Bauer case. In response, the Swiss Embassy wrote on December 11, 1975, that it had decided to continue to maintain its request for Bauer's extradition and enclosed a memorandum on applicable United States law in support of the request. In the memorandum legal counsel to the Embassy concluded that the October 9, 1975, letter of Deputy Attorney General Tyler constituted "best efforts" within the meaning of the agreement with Bauer and that because the bargain had thus been kept, the State Department was obligated by the treaty to assist in Bauer's extradition.

On January 13, 1976, a meeting of representatives from the State Department and the Swiss Embassy was held in connection with the issue of Josette Bauer's extradition. The memorandum of the meeting suggests that much of it was devoted to a discussion of the legal issues in the case. The Swiss also reiterated the country's demand for Bauer's extradition. A note from the Department of State to the Swiss Charge d' Affaires followed the meeting; in it the Department reiterated its suggestion that "it would be in the best interest of both our Governments . . . to terminate the litigation in this case". The Department also voiced its agreement with the Embassy of Switzerland that the extradition of Bauer would be proper under the treaty. The note stated that the "very stringent view" of the Court of Appeals for the Fifth Circuit obligated the United States Government to attempt to prevent her extradition. The Ambassador from Switzerland responded on March 15, 1976: "[I]n order to preserve its important inter-

extradition "shall be granted for the following crimes and offenses . . ." Neither District Judge Clyde Atkins in the 1967 extradition proceeding, nor this Department, have found applicable any of the defenses enumerated in Articles VII, VIII, or IX of the treaty.

Nevertheless, mindful of the commitment made by representatives of the Department of Justice, even though without the authorization or approval of the Department of State, to exert best efforts to assure that Ms. Bauer would not be returned to Switzerland, the Department of State has held discussions with representatives of the Embassy of Switzerland and had two exchanges of notes on this subject. After an initial exchange of notes of October 24 and December 11, 1975 (enclosed), in which the Swiss Government maintained its request and expressed the opinion that not granting extradition would violate the obligations of the treaty, a meeting of legal representatives was held on January 13, 1976 (memorandum of conversation enclosed) with an expression of continued strong Swiss interest in the extradition of Ms. Bauer. Finally, a first person note was sent to the Charge d'Affaires of the Embassy of Switzerland urging his government to withdraw its extradition request (enclosed). The response of the new Ambassador, addressed to the Secretary of State and dated March 15, 1976 has just been received (en-

closed). For the reasons stated in that note, the Swiss Government continues to maintain its extradition request.

Our repeated attempts at different levels to have the Swiss Government withdraw its extradition request having been unsuccessful, and in the absence of discretion under the treaty, it is my view that the United States Government has made its best efforts to assure that Ms. Bauer will not be returned to Switzerland. I believe the unauthorized assurances of Justice Department representatives can and should require no more.

In this connection, I am pleased to note that your Department has taken steps to ensure that a problem of this nature does not recur. While your letter describes the instructions as being that any future agreements be approved in advance by your Department, I expect that no such approval, directly affecting treaty obligations and the conduct of foreign relations, will be given without the concurrence of the Department of State.

Finally, I note that the Swiss Government throughout has expressed its willingness for its views to be communicated to the court, both through the enclosed documents and through participation in the hearing later this month.

Sincerely,
s/ Robert S. Ingersoll
Robert S. Ingersoll

ests in the administration of justice and its rights under the treaty in question, [the Swiss Confederation] must respectfully maintain its request for Ms. Geisser's extradition."

After considering this evidence the district court concluded:

[T]he Court does not agree that the Government has, indeed, used its best efforts to forestall petitioner's extradition. Its "best efforts," to be charitable, have been too little, and too late.

This determination was based in part on the court's finding that in the 1975 communications with the Department of State the Justice Department failed to mention the petitioner's "well-founded fears for her life should extradition be effected as a matter of a primary concern to both the United States and Switzerland". The district court granted the petitioner's application for release and vacated the extradition order. The United States and the Consul-General of Switzerland, as an intervenor, appeal that order.

## I.

### THE BARGAIN AND ITS BREACH

■ The agreement made by the United States with Bauer had several elements; the extradition issue remains to be resolved. The nature of the bargain with regard to extradition has been characterized in two ways. After the first hearing on Bauer's habeas corpus petition, Judge Mehrtens found that the Justice Department made a definite agreement with Bauer that she would not be deported to Switzerland or France upon her release from prison. On appeal the Government challenged that finding of fact, arguing that the obligation involved only the Government's promise to use its "best efforts" to prevent Bauer's extradition.

In its first opinion this Court remanded the case to the district court for further hearings on the question of "just what has been done with the promise 'to use our best efforts'". *Geisser v. United States*, 513

F.2d at 872. Thus the Court concluded that the agreement made by the Government could most accurately be characterized as a promise to use "best efforts" to prevent Bauer's extradition. In conformance with this conclusion Judge Mehrtens evaluated the Government's actions from a "best efforts" perspective and found them inadequate. We agree.

In this Court's first opinion Chief Judge Brown suggested how the Government could comply with its "best efforts" promise to Bauer:

The best effort would, at a minimum, be a strong presentation to the Department of State as to what had been promised and the likely dangers to the bargainee-defendant-witness.

*Geisser v. United States*, 513 F.2d at 869. The documentary evidence presented to the district court fails to reveal a "best efforts" performance by the United States Government through the Departments of State and Justice. The letter written by Deputy Attorney General Tyler only obliquely refers to the reason for the nonextradition agreement.[4] In none of the documents is there a "strong presentation" of the likely dangers to Bauer suggested by this Court. Under the "best efforts" bargain the Government obligated itself to serve, in effect, as Bauer's personal advocate on the issue of her extradition. In contrast, the letters are written from the perspective of those concerned not so much about commitments to a client but about a damaging legal precedent. The reasons underlying the original bargain, Bauer's admirable performance in keeping her part of the agreement, her "intense fear of reprisals", and the conclusion of Government agents on the case that her fears were well-founded were never presented to the State Department by the Department of Justice nor by the former to the Swiss Confederation.

The Department of Justice conceded at oral argument that Deputy Attorney General Tyler's letter to Secretary of State Kissinger did not contain a representation

**4.** *See* note 2 *supra*, at para. 8.

that Bauer feared for her life on extradition to Switzerland and that some Justice Department staff members had concluded at the time of the bargain that her fears were well-founded. The Department nevertheless contends that such an omission is irrelevant because the Swiss Embassy was aware of such concerns and concluded they were unrealistic. We do not agree. The "best efforts" bargain requires that the Government advocate Bauer's case for nonextradition to Switzerland and France in the most effective terms possible. Her intense fear for her life was the predicate for the bargain, and the Government's failure to explain fully and strongly this part of the agreement reduced its advocacy of her cause almost to an empty gesture.

In *Santobello v. New York,* 1971, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, the Supreme Court held that the petitioner's constitutional rights had been violated when the prosecutor failed to keep its bargain to make no sentence recommendation. The Court reached this result even though the judge stated at sentencing that he was "not at all influenced" by the district attorney's recommendation.

> We need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and we have no reason to doubt that. Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration.

404 U.S. at 262–63, 92 S.Ct. at 499. The same reasoning applies here. The Government promised to use its "best efforts" to prevent Bauer's extradition, and this Court determined that the commitment at a minimum requires a "strong presentation" of what was promised and of the likely dangers to the bargainee. The Government failed to make such a presentation. That the Swiss may to some extent be aware of her fears does not relieve the Government of the obligation to make the strongest case possible for the nonextradition of Bauer to Switzerland and France. As the Supreme Court stated in *Santobello:* "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S.Ct. at 499.

■ The First Circuit has suggested the proper focus in this situation:

> We must lastly observe, because of the government's argument here, that a prosecutorial failure to fulfill a promise or to make a proper promise is not rendered harmless because of judicial refusal to follow the recommendation or judicial awareness of the impropriety. . . .
> [I]t is the defendant's rights which are being violated when the agreement is broken or meaningless. It is his waiver which must be voluntary and knowing.

*Correale v. United States,* 1 Cir. 1973, 479 F.2d 944, 949. Similarly, the reaction of the Swiss is irrelevant to the Government's obligation to keep its agreement. Our focus here must be on the nature of the promise made to Bauer. A plea bargain is contractual in nature; and when the prosecution breaches the agreement, the entire legal basis for the plea fails. *See United States v. Bridgemen,* 1975, 173 U.S.App.D.C. 150, 523 F.2d 1099, 1109–10, *cert. denied,* 425 U.S. 961, 96 S.Ct. 1743, 48 L.Ed.2d 206; *United States v. Gorham,* 1975, 173 U.S. App.D.C. 139, 523 F.2d 1088, 1097. Because a guilty plea involves a waiver of constitutional rights, *McCarthy v. United States,* 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, it must be made voluntarily. The Supreme Court established the standard for voluntariness in *Brady v. United States,* 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, by quoting a passage from a dissenting opinion by Judge Elbert Tuttle: [5]

---

5. *Shelton v. United States,* 1957, 242 F.2d 101, 115 (Tuttle, J., dissenting), *approved en banc,* 5 Cir., 246 F.2d 571, 572 n. 2, rev'd on *confession* of error on other grounds, 1958, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579.

[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

397 U.S. at 755, 90 S.Ct. at 1472. Here a promise remains unfulfilled, and the plea is therefore involuntary unless the breach is remedied. "It is axiomatic [under *Santobello*] that no guilty plea that has been induced by an unkept plea bargain can be permitted to stand." *Dugan v. United States,* 5 Cir. 1973, 521 F.2d 231; *United States v. Pihakis,* 5 Cir. 1977, 545 F.2d 973; *Scrivens v. Henderson,* 5 Cir. 1976, 525 F.2d 1263, *cert. denied,* 429 U.S. 919, 97 S.Ct. 311, 50 L.Ed.2d 285.

■■■ As the foregoing discussion suggests, the district court's finding that the Government failed to use its "best efforts" to forestall the petitioner's extradition is not clearly erroneous. Fed.R.Civ.P. 52(a). We reject the Department of Justice's contention that the clearly erroneous standard is inapplicable to review a record confined to documentary evidence. The rule in this Circuit is clear and has been reiterated many times:

> The appellant's burden, under Fed.R. Civ.P. 52(a), of showing that the trial judge's findings of fact are 'clearly erroneous' is not as heavy . . . as it would be if the case had turned on the credibility of witnesses appearing before the trial judge. . . . However, regardless of the documentary nature of the evidence and the process of drawing inferences from undisputed facts, the reviewing court must apply the 'clearly erroneous' test. (Footnote omitted.)

*Sicula Oceanica, S. A. v. Wilmar Marine Eng. & Sales Corp.,* 5 Cir. 1969, 413 F.2d 1332, 1333–34. *See Volkswagen of America, Inc. v. Jahre,* 5 Cir. 1973, 472 F.2d 557, 559; *Burston v. Caldwell,* 5 Cir. 1975, 506 F.2d 24, 26–27, *cert. denied,* 421 U.S. 990, 95 S.Ct. 1995, 44 L.Ed.2d 480. Under the clearly erroneous test the district court's finding of a breach of the plea bargain by the Government must stand.[6]

---

6. In this appeal the appellant, Department of Justice, and the intervenor appellant, Consul General of the Government of Switzerland, raise several issues that have not been previously contested in this case. The Swiss Confederation argues that the nonextradition promise was not part of the original plea bargain and therefore that Bauer waived no constitutional rights in reliance on it. The Department of Justice makes a similar claim, that the "best efforts" representation was not an integral part of the plea bargain. In addition, the intervenor contends that Bauer materially breached the plea bargain by escaping from prison and thus has no right to enforcement of the agreement. After the first hearing in this case, Judge Mehrtens found that the Government's nonextradition agreement was an integral part of the plea bargain. In the initial appeal Chief Judge Brown specifically noted in his opinion that "the Government does not challenge the findings of fact of the District Court". *Geisser v. United States,* 513 F.2d at 868. On remand the district court was charged with determining how the Government would keep its bargain. *Id.* at 871–72. Thus, the Department of Justice and the Swiss Consul General are challenging a factual finding made in the first habeas corpus hearing and not subsequently contested. The Government is bound by its decision not to challenge the finding of the district court that the nonextradition agreement was an integral part of the plea bargain. In addition, an intervenor must accept the proceedings as he finds them. The Swiss Consul General intervened after the district court's factual findings as to the nature of the agreement were made and accepted by this Court on appeal, with one modification. The intervening Swiss Confederation has no right to relitigate the issues. *Johnson v. Middleton,* 7 Cir. 1949, 175 F.2d 535; *Hartley Pen Co. v. Lindy Pen Co.,* S.D.Cal.1954, 16 F.R.D. 141, 153. *See* 3B Moore's Federal Practice ¶ 24.-16[1] and n. 8 (1977). We therefore reject arguments that challenge the determination that in pleading guilty Bauer waived her constitutional right to a fair trial in reliance on the Government's promise to use its "best efforts" to prevent her extradition to France and Switzerland.

## II.

## REMEDY

When a plea bargain is breached, the courts must fashion a remedy that insures the petitioner "what is reasonably due en the circumstances". *Santobello v. New York,* 404 U.S. at 262, 92 S.Ct. at 499. *See also United States v. I. H. Hammerman, II,* 4 Cir. 1975, 528 F.2d 326, 332. And what is reasonably due "will vary". *Correale v. United States,* 1 Cir. 1973, 479 F.2d 944, 950. Generally, the bargain is "either specifically enforceable between the *parties to the agreement* or the plea is void" (emphasis in original). *Gallejos v. United States,* 5 Cir. 1972, 466 F.2d 740, 741. In *Santobello* the Supreme Court discussed possible remedies:

> The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i. e.,* the opportunity to withdraw his plea of guilty. (Footnote omitted.)

404 U.S. at 263, 92 S.Ct. at 499. The alternative involving withdrawal of the guilty plea and resentencing before a different judge was available in *Santobello* because the petitioner had been released on bail pending appeal and had not yet begun to serve his sentence. "The court therefore had no reason to consider other possible means of providing specific enforcement." *Correale v. United States,* 1 Cir. 1973, 479 F.2d 944, 950.

Chief Judge Brown discussed the remedies available in this case in his opinion in the first appeal:

> [T]he avenues of redress available for Bauer are few. Eradicating the impact of her testimony is impossible. And, of course, an opportunity to replead seems superficial and unrealistic in view of her long confinement. Specific performance may well be the only way out to keep the bargain.

*Geisser v. United States,* 513 F.2d at 871. The district court's remedy gives decisive weight to Bauer's fears for her life on extradition to Switzerland or France; it vacated the outstanding extradition order against Bauer. We decline to go that far at this juncture. We conclude that a narrowly drawn remedy specifically enforcing the Government's "best efforts" agreement is required. The Government must again try to prevent Bauer's extradition to Switzerland or France. We are not convinced that the vast powers of persuasion at the command of the Departments of Justice and State have been adequately applied to Bauer's cause. The bargain she made with the United States Government in entering her guilty plea and waiving her constitutional rights requires no less.

While retaining jurisdiction, we remand the case to the district court if, in the discretion of that court, further proceedings are necessary or appropriate. The Government has a reasonable time in which to use its "best efforts" to prevent the extradition of Bauer to Switzerland or France. Enforcement of the extradition order outstanding against Bauer must of course be held in abeyance until this case has been resolved.

## III.

## DISQUALIFICATION OF DISTRICT JUDGE

■ The intervenor-appellant, the Consul General of Switzerland, contends that Judge Mehrtens, as a material witness to disputed facts concerning the plea bargain in this case, had an obligation to disqualify himself under 28 U.S.C. § 455 (1970).[7] According to the Swiss representative, at the

---

7. 28 U.S.C. § 455 (1970), 62 Stat. 908, before its amendment, provided:

> Any justice or judge of the United States shall disqualify himself in any case in which

he . . . is or has been a material witness . . . .

time Judge Mehrtens presided over Bauer's guilty plea he became aware of the elements of the bargain put into dispute by her habeas corpus petition and therefore is a material witness to those facts. The appellee, Bauer, responds that Switzerland intervened at the time of the second hearing when the only issue before Judge Mehrtens was whether the Government had used its "best efforts" to keep its bargain with Bauer.[8] At that point in the case the district court's independent knowledge of the elements of the bargain was not at issue. The Swiss Consul General's response in its reply brief is that Judge Mehrtens has a continuing obligation to disqualify himself.

The Fourth Circuit in *United States v. Smith*, 4 Cir. 1964, 337 F.2d 49, *cert. denied*, 1965, 381 U.S. 916, 85 S.Ct. 1542, 14 L.Ed.2d 436, rendered a thoughtful opinion analyzing the relationship between section 455 and 28 U.S.C. § 2255 (1970), authorizing habeas corpus petitions by federal prisoners. The court concluded:

> It would be anomalous, indeed, having determined that the purpose of section 2255 was to permit the trial judge, because of his familiarity with the proceedings and ability to supplement the record, to pass upon motions thereunder, now to ascribe to Congress the intention to disqualify any judge possessing that familiarity with the proceedings from passing upon the motion. We are of the opinion that sections 2255 and 455 of Title 28 should be construed together. So construed, it is apparent that the district judge here was not a material witness within the meaning of the latter section.

337 F.2d at 53. In line with the position taken by most of the other circuits, *McKinney v. United States*, 9 Cir. 1973, 487 F.2d 948, 949–50; *Hoffa v. United States*, 6 Cir. 1973, 471 F.2d 391, 394, *cert. denied*, 414 U.S. 880, 94 S.Ct. 159, 38 L.Ed.2d 125; *Mirra v. United States*, 2 Cir. 1967, 379 F.2d 782, 788, *cert. denied*, 389 U.S. 1022, 88 S.Ct. 593, 19 L.Ed.2d 677, we adopt the *Smith* court's reasoning and reject the intervenor's contention that Judge Mehrtens has an obligation to disqualify himself as a material witness.

**VACATED AND REMANDED.**

COLEMAN, Circuit Judge, concurring in part and dissenting in part.

I agree that Judge Mehrtens was not disqualified.

I agree with what is said in the remainder of the majority opinion, but I cannot concur in it, because it does not reach what I believe to be the fundamental issues in the case.

I

Article VI of the Constitution commands that "all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land".

For seventy seven years the United States has had an extradition treaty with the Swiss Confederation, ratified by the Senate. Nobody contends that this treaty in any manner violates the Constitution itself.

I therefore take the position that the obligations of the Treaty cannot be bargained away by any federal prosecutor, however sincere the effort. Being a part of the supreme law, binding on every officer of the United States, the treaty terms could not be modified or diminished by a plea bargain in a court which had no authority to amend or abrogate the Treaty. Consequently, that part of the plea bargain which attempted to commit the United States to any course of action inconsistent with the Treaty violated the Constitution. I respectfully suggest that it is void and entitled to no notice by the courts.

Moreover, before this putative plea bargain was made, the Swiss government had filed in extradition complaint against Mrs. Geisser in federal district court. A hearing was held, in which she was present, along with counsel. The court announced its order that she would be extradited to Switz-

8. *See* note 6 supra.

erland when the criminal case against her was completed and any sentence imposed was served. Consequently, she could not have been misled or overreached in the matter of her actual status. She was simply clutching at any possible straw to avoid returning to a Swiss prison. Thus far, she has been successful.

## II

In *Santobello* the plea bargaining was concerned with the sentence which was to follow a guilty plea. The prosecutor had agreed that he would make no recommendation on that subject. A subsequent prosecutor, unaware of the agreement, breached it. The Supreme Court held that the agreement had to be kept. The point is that the Court was considering only the sentencing process. It was not concerned with an agreement to take action on subjects outside the normal function or jurisdiction of the court in which the pledge was made.

In my opinion, that part of plea bargains freighted with promises outside the sentencing process and beyond the jurisdiction of the Court should neither be allowed nor enforced. Most assuredly this should be true as to subjects over which the Department of Justice has no jurisdiction, more especially where the defendant has not been misled by representations of the prosecutor.

As I understand this record, the purported agreement was made not to obtain a guilty plea but to get the fugitive to testify against some of her confederates. The defendant was clutching at straws but, so far, the straws have been more effective than a solemn treaty of the United States, a result which I cannot countenance.

## III

Lastly, I am of the view that if the promise is enforceable, the Department has shown reasonable compliance with its agreement. Its efforts are set forth in the majority opinion. I think they were enough. It was never thought that the Department could do any more than "ask", and ask it did. The Swiss government declined to relent, whereupon the duty of the Secretary of State, under the Treaty, is beyond dispute. This defendant's record demonstrates that she is more than able to take care of herself. Not only did she escape from a Swiss prison but she also escaped from federal custody and it was nearly three years after the federal escape before she was caught. So far as I know there has been no hearing nor any findings of fact as to any danger she might be subject to in a Swiss prison, if indeed one can be found which would hold her. On her unsupported assertions of fear, the rights we have guaranteed the Swiss are further delayed, if not altogether thwarted.

Our concern for Constitutional guaranties should never falter, but, with deference, I feel very strongly that our concern for Mrs. Geisser is seriously misplaced. I would enter an order directing immediate compliance with the Treaty.

I respectfully dissent.